Iturrino, Demandante y Apelado, *v.* Iturrino, Demandada
y Apelante.

Apelación procedente de la Corte de Distrito de Aguadilla
en pleito sobre reclamación de participación hereditaria y
nulidad de actuaciones.

No. 1378.—Resuelto en julio 28, 1916.

Registro Civil—Nacimientos, Matrimonios y Defunciones—Párrocos En-
cargados antes de 1885—Inspección del Prelado.—El registro civil, antes
de que comenzaran a regir en enero de 1885 por decreto del Gobierno español
la ley y reglamento sobre el particular, estaba a cargo de los párrocos res-
pectivos bajo la inspección del prelado, quien en las visitas que giraba a
los pueblos de la diócesis examinaba los libros parroquiales en que se asen-
taban las partidas de nacimientos, matrimonios y defunciones.

Ministros de la Religión Católica—Funcionarios Públicos Auxiliares del
Estado—Separación de la Iglesia y el Estado.—Como regla general, los
ministros de la religión católica, por su institución, misión, dotación, fun-
ciones, orden de categorías legalmente reconocido, y servicios legales que
prestaban, constituían durante la soberanía española una clase del Estado.
Tanto los párrocos como su prelado eran funcionarios públicos auxiliares del
Estado. El cambio de soberanía trajo consigo la separación de la Iglesia
y del Estado.

Hijos Naturales—Reconocimiento—Registro Civil antes de 1885—Requisitos
del Registro.—Como consecuencia de estar el registro civil antes de 1885
a cargo de los párrocos bajo la inspección del prelado, actuando éste y
aquéllos como funcionarios públicos, sus funciones, en cuanto a las partidas
de bautismo, eran extensivas al contenido de dichos documentos. En éstos
debían hacer constar los párrocos, entre otras circunstancias, quiénes eran
los padres del niño y la clase de filiación de éste, de modo que si era hijo
natural su padre podía reconocerlo ante el párroco, y haciéndolo en forma
debida era eficaz en derecho.

Id.—Expediente de Reconocimiento de Filiación Natural—Nota Marginal—
Facultades del Superior Gobierno Eclesiástico—Bautismo.—En el año
de 1884, el Superior Gobierno Eclesiástico tenía facultad para ordenar a
solicitud del padre la instrucción de un expediente sobre reconocimiento de
la filiación natural del hijo para que ese reconocimiento se hiciera constar
por medio de nota marginal en la partida de bautismo ya extendida, cuando
el padre no había hecho el reconocimiento en la misma partida, desde cuyo
momento la partida de bautismo y la nota marginal venían a ser no solamente
la prueba del bautismo y de la fecha de su celebración, sino también del
reconocimiento del hijo.

Id.—Reconocimiento Auténtico y Fehaciente.—Las cortes se inclinan siempre
a favor del hijo natural cuando el reconocimiento resulta claro y hecho
públicamente, cualquiera que pueda ser la forma en que se verifique, siempre
que quede de él constancia auténtica y fehaciente.'

Id.—Id.—Reconocimiento por Nota Marginal en 1884 en la Partida de Bau-

tismo.—El reconocimiento de un hijo natural hecho en 1884 por medio de nota marginal puesta en la partida de bautismo por el párroco a virtud de expediente tramitado a solicitud del padre y por decreto del Superior Gobierno Eclesiástico, es un reconocimiento voluntario y espontáneo y hecho en forma solemne, auténtica y fehaciente.

Id.—Nulidad de Institución de Herederos—Preterición de un Hijo Natural—Mejoras y Legados no Inoficiosos.—Con arreglo al artículo 802 del Código Civil es nula la institución de único heredero hecha por el padre en testamento a favor de un hijo legítimo con preterición de un hijo natural reconocido del mismo, aunque deben sostenerse la validez y eficacia de mejoras y legados no inoficiosos hechos en el mismo.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Juan de Guzmán Benítez.*

Abogados del apelado: *Sres. José Sabater* y *Francisco Soto Gras.*

El Juez Presidente Sr. Hernández, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto por la demandada contra sentencia que en 3 de junio del año próximo pasado 1915 pronunció la Corte de Distrito de Aguadilla en el caso arriba expresado.

Alega el demandante en la demanda, su fecha 20 de octubre de 1914, que es hijo natural auténticamente reconocido del Dr. Juan Dionisio Iturrino Rivera en virtud de expediente y decreto emanado del Superior Gobierno Eclesiástico, de fecha 3 de octubre de 1884; que el mencionado doctor falleció en Cataño el día 8 de octubre de 1913 bajo testamento otorgado en esta ciudad de San Juan a 4 de julio de 1912, en el que instituyó como única heredera a la demandada María Camila Teresa de Jesús Iturrino Rivera habida en su matrimonio con Micaela Rivera Ríos; que las operaciones divisorias del caudal relicto por el Dr. Iturrino Rivera fueron practicadas en 18 de mayo de 1914 por la viuda con el albacea contador y el defensor de la menor demandada, habiendo sido aprobadas por resolución de la Corte de Distrito de Aguadilla en 4 de junio de 1914 y protocoladas en la notaría del Licdo. Carlos Franco Soto; que en 17 de junio de 1914 falleció en Arecibo la cónyuge supérstite Micaela

Rivera Ríos; y que ni en el testamento del finado Iturrino Rivera ni en las operaciones particionales de su caudal se ha hecho mención de los derechos hereditarios del demandante, habiendo sido privado así ilegalmente de la participación hereditaria que le confiere la ley como hijo natural reconocido de su finado padre Dr. Juan Dionisio Iturrino Rivera.

La demanda concluye con la súplica de que se dicte sentencia declarando: primero, que es nulo el testamento otorgado por Juan Dionisio Iturrino Rivera en escritura de 4 de julio de 1912; segundo, que también es nula la partición de herencia del finado Dr. Iturrino; tercero, que el demandante tiene derecho a la participación hereditaria que le corresponde como hijo natural reconocido del mismo; y cuarto, que la demandada debe pagar costas, gastos, desembolsos y honorarios de abogado.

A la anterior demanda opuso la demandada excepción previa de que no aduce hechos suficientes para determinar una causa de acción, cuya excepción fué declarada sin lugar por orden de 2 de diciembre de 1914; y habiendo formulado contestación, negó el hecho primero de la demanda en cuanto se afirma que el demandante es hijo natural auténticamente reconocido del Dr. Juan Dionisio Iturrino Rivera, negando asimismo que Iturrino y Rivera haya otorgado algún documento público en que reconozca como hijo natural al demandante. Las demás alegaciones consignadas en la demanda fueron admitidas por la demandada.

Celebrado el juicio la corte dictó la sentencia apelada, por la que declaró con lugar las pretensiones del demandante.

La única cuestión legal a discutir en el presente recurso sobre el derecho que pretende tener el demandante a la herencia del Dr. Juan Dionisio Iturrino Rivera es la de si debe reputarse hijo natural reconocido de Iturrino y Rivera, lo que afirma el demandante y apelado y niega la demandada y apelante, alegando ésta en síntesis que la certificación presentada como prueba para justificar el reconocimiento no

constituye prueba auténtica y fehaciente de ese acto por la razón esencial de que la autoridad eclesiástica en la fecha del pretendido reconocimiento, como ahora, carecía de jurisdicción para resolver sobre el estado civil de las personas.

La prueba que aportó el demandante en el acto del juicio consiste, según el texto literal del escrito de exposición del caso, ''en una certificación expedida por Don Carlos Ormaechea, Presbítero Notario del Obispado de Puerto Rico, en la cual consta que en el año de 1894 fué reconocido de acuerdo con las leyes ecleciásticas el demandante Luis Iturrino López como hijo natural del Dr. Don Juan Dionisio Iturrino.''

Nada se dice sobre el contenido de dicha certificación, y todo lo que en ella se omite debe entenderse en sentido favorable a la apreciación que de esa prueba hace el juez al consignar en su opinión los fundamentos de la sentencia recurrida.

El juez se expresa en los siguientes términos:

''De la evidencia documental resulta probado que el Dr. don Juan Dionisio Iturrino y Rivera en escrito dirigido al Exmo. e Illmo. Señor Obispo de la Diócesis de Puerto Rico con fecha 8 de abril de 1884, fechado en el pueblo de San Sebastián, hace constar que habiendo determinado dar educación según sus circunstancias se lo permitan a un niño hijo suyo y de María de la Cabeza López cuya partida bautismal acompañaba, apareciendo en ella como hijo natural, ha creído de justicia dar su propio apellido a su referido hijo por las ventajas que esto pueda reportar tanto a él como a su madre en sociedad y, por tanto, que desea reconocer a su dicho hijo y dar su autorización para la constancia de dicho reconocimiento en los libros parroquiales; y de la partida bautismal a que se alude antes aparece que el niño cuyo reconocimiento interesaba el solicitante se llama Luis Felipe Augusto, hijo natural de María de la Cabeza López y el cual fué bautizado de edad de siete meses en la parroquia del pueblo de San Sebastián el día 9 de marzo de 1879. Aparece asimismo de dicha certificación que comisionado el cura párroco de San Sebastián don Quintín O. Perdomo, Pbro. por la autoridad eclesiástica Diocesana para la práctica de las diligencias correspondientes al reconocimiento solicitado procedió dicho Cura primero a recibir la declaración de los testigos presentados

por el promovente Dr. Don Juan Dionisio Iturrino habiendo compare-
cido y declarado bajo juramento los testigos Doña María Cabeza López,
madre del niño Luis Felipe Augusto, Don José María Lugo, Don Fran-
cisco Lugo, vecinos todos de dicho pueblo de San Sebastián y mayores
de edad, los cuales fueron examinados a tenor de los particulares de
la solicitud original presentada por el referido Dr. Iturrino, siendo
contestes y conforme con los hechos expuestos en ella todas sus de-
claraciones, y en tal concepto la Autoridad Superior Eclesiástica apro-
bó dicho expediente por virtud de un decreto de fecha 3 de octubre
de 1884, en el que se autoriza al referido cura de San Sebastián para
que en la partida de bautismo del niño Luis Felipe Augusto que se
encuentra en el libro 26 folio 78 vuelto proceda al reconocimiento en
la conformidad que se solicita, expresando que lo verifica en virtud
de este decreto.   En conexión con este decreto aparece puesto al fin
de la certificación de la partida de bautismo del niño de referencia,
una nota marginal cuyo tenor literal es el siguiente: 'Reconocido como
hijo por el Dr. D. Juan Dionisio Iturrino en virtud del decreto ema-
nado del Superior Gobierno Eclesiástico con fecha 3 de octubre de
1885 a solicitud del Dr. Iturrino y en cumplimiento de lo dispuesto
por el Superior Gobierno Eclesiástico en el decreto citado que queda
archivado para constancia.''

Como se ve, el Dr. Juan Dionisio Iturrino espontánea
y voluntariamente reconoció en escrito dirigido a la auto-
ridad superior eclesiástica de la Diócesis de Puerto Rico
al demandante como hijo natural suyo y de María de la Ca-
beza López, y para que quedara constancia de ese reconoci-
miento fué que solicitó la instrucción del expediente en que
recayó el expresado decreto de 3 de octubre de 1884.

El gobierno eclesiástico no decidió contienda alguna sobre
reconocimiento del niño Luis Iturrino López sino que se limitó
a instancia del Dr. Iturrino a instruir expediente para dejar
constatado el reconocimiento hecho por éste, accediendo a
sus deseos.   Cualquier cuestión litigiosa sobre estado civil
era entonces, como es ahora, de la exclusiva competencia
de los tribunales de justicia.

Y el Prelado Diocesano tenía facultades para proceder
como procedió.   El registro civil, antes de que comenzara
a regir en enero de 1885 por decreto del gobierno español

la ley y reglamento sobre el particular, estaba a cargo de los párrocos respectivos bajo la inspección del Prelado, quien en las visitas que giraba a los pueblos de la Diócesis examinaba los libros parroquiales en que se asentaban las partidas de nacimientos, matrimonios y defunciones. Tanto los párrocos como su Prelado eran funcionarios públicos auxiliares del Estado. El Código Penal entonces vigente a virtud de Real Decreto de 23 de mayo de 1879, al definir y castigar el delito de falsificación de documentos públicos por funcionario público, hacía responsable de ese delito al ministro eclesiástico que lo cometiera con relación a actos o documentos que pudieran producir efectos en el estado de las personas o en el orden civil; y la Ley de Enjuiciamiento Civil entre los documentos públicos enumeraba las partidas o certificaciones de nacimiento, de matrimonio y de defunción, dadas con arreglo a los libros por los párrocos o por los que tuvieran a su cargo el registro civil. Como regla general, los ministros de la religión Católica por su institución, misión, dotación, funciones, orden de categorías legalmente reconocido, y servicios legales que prestaban, constituían durante la soberanía española una clase del estado, según sentencias del Tribunal Supremo de España en materia penal, de 29 de abril de 1885, y 13 de marzo de 1888.

Si el Obispo Católico Apostólico Romano de Puerto Rico dejó de ejercer funciones públicas oficiales desde el cambio de soberanía que trajo consigo la separación de la Iglesia y del Estado, según dijimos al resolver en 20 de mayo de 1905 el caso de *Díaz Caneja* v. *Marxuach,* 8 D. P. R. 480, esta corte entendió que las ejercía durante la dominación española.

Como consecuencia de estar el registro civil a cargo de los párrocos bajo la inspección del prelado, actuando éste y aquéllos como funcionarios públicos, sus funciones, contrayéndonos a las partidas de nacimiento, tenían que ser extensivas al contenido de dichos documentos. En éstos debían hacer constar los párrocos entre otras circunstancias quiénes eran los padres y abuelos del niño, la clase de filiación

de éste, y los nombres de los padrinos; de modo que si el niño
era hijo natural su padre podía hacer el reconocimiento ante
el párroco, y haciéndolo en forma debida el reconocimiento
era eficaz en derecho.    Escriche, Diccionario de Legislación
y Jurisprudencia, tomo 3, página 58, y tomo 4, página 255,
edición del año 1876.

En el caso de *Rivera* v. *Cámara,* 17 D. P. R. 528, dijimos
que "una partida de bautismo en la que se expresa que el
bautizado es hijo natural reconocido de otra persona, pero
sin que se afirme que dicha persona hizo tal reconocimiento
ante el sacerdote que autorizó la partida, ni se certifica que
tal reconocimiento tuvo lugar en presencia de testigos que
den fe de dicho reconocimiento, no es documento suficiente
para acreditar el reconocimiento del interesado como hijo
natural."    Luego, *a contrario sensu,* cuando tales circuns-
tancias constan en el documento, debe reputarse éste sufi-
ciente para acreditar el reconocimiento.    Tal ocurre en el
presente caso en que por nota marginal de la partida del
nacimiento del demandante Luis Iturrino en cumplimiento
de decreto del Superior Gobierno Eclesiástico se hizo cons-
tar su filiación natural con relación al Dr. Iturrino, desde
cuyo momento la partida de bautismo con la nota marginal
vino a ser no solamente prueba del bautismo y de la fecha
de su celebración, sino también del reconocimiento del niño
Iturrino.

Entendemos que una vez extendida y autorizada en el
libro correspondiente una partida de bautismo, de matrimo-
nio o de defunción, cesaban completamente las funciones del
párroco, el cual no podía hacer alteración alguna sino medi-
ante orden de autoridad competente o del Obispado bajo cuya
inspección estaban los libros parroquiales; pero si el padre
del hijo natural no había hecho el reconocimiento en la misma
partida con las formalidades debidas, le era permitido solici-
tar su enmienda en el sentido de que por nota marginal se
hiciera constar en ella dicho reconocimiento, a cuyo fin debía
acudir al tribunal eclesiástico y presentar la solicitud expre-

siva de su deseo, acompañando copia de la partida y pidiendo que se accediera a su pretensión previas las diligencias necesarias para justificar que la reclamación era justa. Tratado Teórico-Práctico de Procedimientos Eclesiásticos por Don Francisco Gómez Salazar y Don Vicente de la Fuente, Tomo I, páginas 496 y 511, edición del año 1868. Así procedió en el presente caso el Dr. Juan Dionisio Iturrino.

En el caso de *García et al.* v. *Garzot,* 18 D. P. R. 866, aceptamos las facultades de la autoridad eclesiástica, refiriéndonos al año de 1895, para tramitar y resolver el expediente sobre asentamiento de una partida de bautismo en el libro correspondiente; y siendo ello así, nos parece debemos admitir como consecuencia lógica que en el año de 1884 podía ordenar como ordenó aquella autoridad la instrucción del expediente sobre reconocimiento de la filiación natural del demandante para que ese reconocimiento se hiciera constar por medio de nota marginal en la partida de bautismo ya extendida.

Ni el escrito del Dr. Iturrino a la Autoridad Superior Eclesiástica de la Diócesis de Puerto Rico, ni las manifestaciones en él contenidas, ni su firma puesta al pie de dicho escrito, ni las declaraciones de los testigos que depusieron en el expediente sobre reconocimiento, han sido impugnadas como supuestas o falsas, y sólo se niega la autenticidad del reconocimiento por falta de autoridad en el gobierno eclesiástico de la diócesis para instruir y decidir el expediente de reconocimiento.

Opinamos que el reconocimiento fué voluntario y espontáneo y hecho en forma solemne, auténtica y fehaciente. En todo caso siempre resultaría de poca importancia la cuestión de si el tribunal eclesiástico tenía en realidad jurisdicción para intervenir en el caso de que se trata, pues las cortes se inclinan siempre a favor del hijo natural cuando el reconocimiento resulta claro y públicamente, cualquiera que pueda ser la forma en que se verifique, siempre que quede de él constancia auténtica y fehaciente. *Pérez Villamil et al.*

v. *Romano et al.,* 19 D. P. R. 875.   La parte apelante no nos ha citado caso alguno de la Corte Suprema de España que sea contrario a la anterior doctrina.

Sostiene la parte apelante que la corte inferior cometió error al declarar nulo el testamento otorgado por Juan Dionisio Iturrino y Rivera por preterición del demandante como heredero forzoso en concepto de hijo natural reconocido.

El artículo 802 del Código Civil claramente establece que la preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento, o sea que nazcan después de la muerte del testador anulará la institución del heredero, pero valdrán las mandas y mejoras cuando no sean inoficiosas.

Con arreglo al anterior precepto es nula la institución de única heredera hecha por el Dr. Juan Dionisio Iturrino a favor de la demandada con preterición del demandante que es hijo natural reconocido del mismo, debiendo sostenerse la validez y eficacia de las mejoras y legados hechos en dicho testamento.

Por las razones expuestas es de confirmarse la sentencia apelada, menos en cuanto declara nulo el testamento otorgado por el Dr. Juan Dionisio Iturrino, entendiéndose que esa nulidad afecta solamente a la institución de la demandada María Camila Teresa de Jesús Iturrino Rivera, como única heredera del mismo, debiendo participar el demandante de los derechos hereditarios que le corresponden con arreglo a la ley vigente en la fecha del fallecimiento de su padre.

> *Confirmada la sentencia apelada, menos en cuanto declara nulo el testamento, entendiéndose que esa nulidad afecta solamente a la institución de la demandada como única heredera, debiendo participar el demandante de los derechos hereditarios que le corresponden.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.