Martínez, Demandante y Apelante, v. Rodríguez, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Guayama en pleito sobre nulidad de testamento y otros extremos.

No. 1684.—Resuelto en diciembre 7, 1917.

Nulidad de Testamento—Fraude y Confabulación—Prueba, Clase de.—En casos en que se solicita la nulidad de un testamento aparentemente válido en su forma y solemnemente hecho ante notario fundado en fraude y confabulación, las autoridades han establecido unánimemente que la prueba debe ser clara, y cuando el demandante ha dejado de presentar aquel caso claro que exige la ley, su acción debe ser declarada sin lugar.

Inspección Ocular—Práctica en Presencia de las Partes o sus Abogados—Acta de Inspección.—La ley de evidencia de marzo 9, 1905, no es inconsistente con las disposiciones de los artículos 1183, 1208 y 1209 del Código Civil sobre inspección personal del tribunal o juez, siendo la inspección personal un medio de prueba que debe practicarse en presencia de las partes o de sus abogados, a quienes debe dárseles oportunidad para explicar o añadir lo que estimen conveniente al resultado de la inspección. Del propio modo la corte debe levantar un acta de la inspección ocular.

Escrituras Notariales, Fuerza de—Renuncia de Derechos—Prueba, Clase de.—Si las escrituras concernientes a bienes raíces o renuncia de derechos pudiesen posteriormente anularse con prueba testifical de la naturaleza de la que en este caso se ha presentado, tendente a demostrar que el otorgante desconocía el contenido de la misma y que si bien firmó voluntariamente en cuanto se refiere al traspaso de su derecho a la finca particular que se le adjudicara, el notario leyó con tal rapidez el documento que le fué imposible seguirlo, el número de impugnaciones que pudiera hacerse contra las escrituras notariales sería ilimitado y la adquisición de propiedades quedaría sin seguridad; pero la doctrina legal imperante sostiene todo lo contrario.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. Manuel A. Martínez Dávila.

Abogado del apelado: Sr. C. Domínguez Rubio.

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

En 24 de abril de 1914, en la casa-habitación, de su esposo y ella, Doña Manuela Martínez Vázquez otorgó un testamento abierto ante el Notario de Cayey, Don Francisco Navarro Ortiz. Nueve días después falleció dicha señora, o sea, el día 3 de mayo de 1914. Su padre, Don Manuel Martínez Avilés, es el demandante en este pleito, y el demandado su esposo Fructuoso Rodríguez.

El día 16 de mayo de 1914, el demandante-apelante com-

pareció ante el propio notario y cedió a Fructuoso Rodríguez por la suma de $1,400 todos sus derechos y acciones en los bienes hereditarios dejados por su hija y que había adquirido a virtud del testamento que ésta otorgara en 24 de abril de 1914, y vendió especialmente al citado Fructuoso Rodríguez su título y dominio sobre una fracción determinada de terreno que se le adjudicara en el testamento.

En dicho testamento se tasaron todos los bienes de que disponía la testadora y se hizo una partición de la participación que le correspondía a la testadora en los bienes de la sociedad matrimonial.

En la demanda se alegan tres diferentes causas de acción. Se impugna el testamento de dolo y fraude. Por el mismo fundamento de impugnación se ataca en la segunda causa de acción la tasación y particiones hechas en el testamento. Y asimismo se alega bajo la tercera causa de acción que medió fraude y confabulación en el otorgamiento de la escritura.

El demandado no sólo niega todas las alegaciones de fraude, sino que alega, además, un impedimento positivo (*positive estoppel*) contra el demandante por razón del otorgamiento de la escritura de 16 de mayo de 1914.

Lo más esencial de la primera causa de acción se alega en la 7ª. cláusula de la demanda, que reza como sigue:

"Alega el demandante que la cláusula anteriormente transcrita no fué dictada por la testadora al notario, pues ella se encontraba en estado de gravedad, padeciendo de tuberculosis miliar pulmonar; que ella era completamente lega en tales materias y el referido testamento fué autorizado en una habitación distinta a la que ocupaba la testadora, y que fué dictado por el demandado y el notario puestos de acuerdo y con el propósito de defraudar al demandante como heredero legítimo de la testadora; que dicha testadora, no autorizó ni a su esposo el demandado ni al notario autorizante para que consignaran la referida cláusula; que los testigos del testamento no estuvieron presentes en el acto del otorgamiento y que dicho demandado con el propósito deliberado de defraudar al demandante envió a éste a Guayama, alejándolo de la casa de la testadora para redactar a

sus espaldas el referido testamento sin la autorización de la testadora que no intervino en la redacción del mismo. Que el demandado y su esposa en ningun momento celebraron contrato de capitulaciones matrimoniales para que dicho demandado apercibiera interés alguno por su administración y que éste de mala fe, engañosa y fraudulentamente hizo que se consignara en el testamento de su esposa la cláusula anterior para por este medio privar al demandante en su carácter de heredero forzoso de su hija de una parte de su legítima.''

En el juicio los testigos del demandante declararon que Manuela Martínez Vázquez estaba enferma en su cama con la enfermedad que se describe en la demanda, pero también declararon sobre otro punto, no alegado en la demanda, de que dicha señora tenía el hábito de la embriaguez y sufría de agudos ataques de ''delirium tremens.''

Aunque no están de acuerdo entre sí, estos testigos declararon también de que la testadora no estaba en condiciones de otorgar una escritura válida o un testamento, aunque la oportunidad que la mayor parte de los mismos tuviese para conocer este hecho se hacen constar de un modo muy vago, y uno de los testigos principales del demandante reveló evidencia tendente a demostrar que a la fecha del otorgamiento del testamento la testadora podía conversar con él y su esposo y preguntar por ellos con solicitud.

La prueba del ''delirium tremens'' no mereció ningún crédito, siendo así que no se llamara a declarar a ningún perito sobre el particular, y sin embargo, la prueba tiende a demostrar que estuvo asistida por un médico, el Doctor Janer. Realmente, hay prueba tendente a demostrar que dicho médico le recetó brandy. Además, como ya lo hemos dicho el demandado no tuvo conocimiento de que trataría el demandante de apoyarse sobre estos hechos.

Algunos de estos varios testigos declararon sobre las circunstancias bajo las que se otorgó el testamento, describiendo lo que pasó, sosteniendo que vieron a las personas que fueron llamadas para servir de testigos en el otorgamiento del testamento.

Se presentó prueba tendente a demostrar que las fincas adjudicadas al marido fueron valoradas en menor cantidad que el montante que se describe en el testamento, y también se presentó prueba tendente a demostrar que la finca adjudicada al padre valía menos de los $1,400 mencionados en el testamento.

La teoría que resalta del testamento es la de que el marido poseía bienes privativos por la suma de *dos mil dólares* que le reconoció la testadora, además de otras cosas, y el demandante en el juicio trató de demostrar que Fructuoso Rodríguez al tiempo de su matrimonio no tenía nada en absoluto.

La prueba que se ha presentado para demostrar que el marido no tenía bienes ningunos de fortuna a la época en que contrajo matrimonio, aunque sólo se halla contradicha por el testamento, no nos satisface, y aun cuando hubiese sido esa prueba satisfactoria no podría impedir la confirmación de la sentencia por razón de los actos del demandante subsiguientes a la muerte de su hija.

Aquí tenemos un testamento, aparentemente válido en su forma, solemnemente hecho ante notario, y las autoridades unánimemente han establecido que cuando se alega fraude y confabulación la prueba debe ser clara. Aun cuando no hemos expuesto toda la prueba testifical, estamos convencidos, después de haber estudiado la exposición del caso, de que la prueba presentada no es aquella prueba clara que exige la ley.

La corte, sin embargo,—haya o no tenido alguna duda sobre la veracidad del testimonio prestado por los testigos del demandante—practicó una inspección ocular de la casa en que murió la testadora. Por virtud de esta inspección la corte llegó al convencimiento de que los testigos del demandante, o algunos de los más importantes, no decían la verdad. Esta inspección ocular la practicó la corte a su propia iniciativa, sin que ninguna de las partes la sugiriera y sin

que ninguna de las partes estuviese presente al practicarse dicha inspección.

El artículo 1183 del Código Civil dispone que " las pruebas pueden hacerse: por instrumentos, por confesión, por inspección personal del tribunal o juez, por peritos, por testigos y por presunciones."

Los artículos 1208 y 1209 del propio código prescriben lo siguiente:

"Artículo 1208.—La prueba de inspección personal del tribunal o juez sólo será eficaz en cuanto claramente permita al tribunal apreciar, por las exterioridades de la cosa inspeccionada, el hecho que trate de averiguar.

"Artículo 1209.—La inspección practicada por un tribunal o juez podrá ser apreciada en la sentencia que otro dicte, siempre que el primero hubiera consignado con perfecta claridad en la diligencia los detalles y circunstancias de la cosa inspeccionada."

La Ley de Evidencia de 9 de marzo de 1905 no es inconsistente con estas disposiciones. Puesto que la inspección personal es, por consiguiente, un medio de prueba debe practicarse en presencia de las partes o de sus abogados, a quienes debe dárseles una oportunidad para explicar o añadir lo que estimen conveniente al resultado de la inspección. Del propio modo la corte debe levantar una acta de la inspección ocular.

Nada de esto se hizo en este caso. El demandante pudo haber hecho que sus testigos explicaran la situación, o, al menos ofrecido hacerlo. Antes de que se terminase el juicio los abogados pudieron haber argumentado a la corte sobre el efecto de la inspección ocular, y es éste un derecho generalmente reconocídoles a los abogados. De haber sido el presente un caso en el que hubiera existido un verdadero conflicto de la prueba, la sentencia tendría que revocarse, pero después de haber examinado los autos en su totalidad hemos llegado al convencimiento de que se ha hecho sustancial justicia, y a tal grado ha llegado nuestra convicción sobre este particular, que hasta nos hubiéramos sentido obli-

gados a revocar la sentencia, si ésta se hubiese dictado a favor del demandante.

Así lo creemos, como lo hemos indicado anteriormente, porque el demandante ha dejado de presentar aquel caso claro que exige la ley cuando se impugna un testamento por el vicio de fraude.

Consideraciones del mismo género son aplicables a la *segunda* causa de acción, pero la resolución de tal causa de acción la cubre la situación legal respecto a la *tercera*.

El demandante—un hombre que en la silla del testigo demostró ser de suficiente inteligencia, actividad y circunspección en la mayor parte de sus particularidades,—ataca la escritura de 16 de mayo de 1914 sólo para alegar sustancialmente que desconocía el contenido de la misma. Confiesa que firmó voluntariamente la escritura en cuanto se refiere al traspaso de su derecho a la finca particular que se le adjudicara, pero sostiene que el notario leyó con tal rapidez la escritura que le fué imposible seguirlo. Además, que no se preocupaba de otro asunto salvo el de la ameritada finca particular.

Si las escrituras concernientes a bienes reales o renuncia de derechos pudiesen posteriormente anularse con prueba testifical de la naturaleza de la que en este caso se ha presentado, el número de impugnaciones que pudiera hacerse contra las escrituras notariales sería ilimitado y la adquisición de propiedades quedaría sin seguridad. La doctrina legal sostiene todo lo contrario. Razonamientos semejantes aplicables al presente caso se han hecho en los casos de *Cruz v. López,* 17 D. P. R. 43, y de *Torres v. Lothrop, Luce & Company,* 16 D. P. R. 181; 231 U. S. 171.

La sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados del Toro y Hutchison.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron.