MARIO y MERCEDES ORTIZ FLORES y PEDRO ORTIZ TORRES, demandantes y apelantes, *v.* MARÍA BERMÚDEZ PÉREZ y RAMONA, JUANA, RAMÓN y RAFAEL ORTIZ BERMÚDEZ, demandados y apelados.

Núm. 9982.—*Sometido:* Noviembre 15, 1949. *Resuelto:* Diciembre 19, 1949.

 

*Luis Mendín Sabat,* abogado de los apelantes; *Domínguez & Domínguez,* abogados de los apelados.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Por testamento abierto otorgado en la ciudad de Guayama en 19 de julio de 1945, Ramón Ortiz Santiago, de 74 años de edad, reconoció a varios hijos naturales y la existencia de una deuda de $2,000 a favor de su concubina María Bermúdez Pérez; designó albacea testamentario a Antonio Pomales Navarro; legó a dicha María Bermúdez Pérez la mitad de sus bienes, luego de deducir de esa mitad tres legados de $200 en favor de otras tantas personas; expresó su deseo de que en pago de ese legado se adjudicaran a la aludida legataria tres casas que él poseía en las calles Jobos, Jobos esquina a San José, y San José, de Guayama, las cuales describe en su testamento; e instituyó como herederos a los hijos naturales que en el testamento reconocía y que designó con los nombres de Pedro y Mario Ortiz Flores, Ramona, Juana, Ramón y Rafael Ortiz Bermúdez, en el remanente de todos sus bienes, derechos y acciones, por partes iguales.

Habiendo muerto el testador en octubre 18 del mismo año, sus hijos reconocidos Mario Ortiz Flores, Pedro Ortiz Torres y Mercedes Ortiz Flores(1) entablaron demanda sobre nulidad de testamento y otros extremos contra la legataria y acreedora preferente María Bermúdez Pérez y contra los otros hijos naturales, por haber éstos rehusado unirse como demandantes. En la demanda se alegó en lo pertinente que la demandante Mercedes Ortiz Flores había sido preterida; que al otorgar el testamento el testador "no estaba en su entero juicio o conocimiento"; que se designó al demandante

(1)Mercedes Ortiz Flores fué declarada hija natural reconocida de Ramón Ortiz Santiago por sentencia dictada por la Corte de Distrito de Guayama en pleito independiente entablado con ese fin, con posterioridad a la muerte del testador.

Pedro Ortiz Torres con el nombre de Pedro Ortiz Flores; que se reconoció a favor de la demandada María Bermúdez Pérez un crédito preferente de $2,000, cuando la realidad era que ella sólo había entregado al testador $200, importe de una indemnización recibida por la muerte de un hijo; que el legado a favor de María Bermúdez Pérez es nulo por ser contrario a lo provisto en los artículos 751, 794 y otros del Código Civil; que el justiprecio de los bienes hecho por el testador no es real, ya que el valor de los mismos excede de $8,000; y que el albacea designado no ha dado cumplimiento a lo dispuesto en la Ley de Procedimientos Legales Especiales. Fundado en esas alegaciones solicitaron se declare nulo el testamento, por la omisión de consignar en el mismo a Mercedes Ortiz Flores como hija natural y heredera; que se declare nulo y sin valor ni efecto el legado de la mitad de todos los bienes del testador hecho a favor de María Bermúdez Pérez; que el crédito preferente de $2,000 a favor de ésta se sustituya por la suma de $200; que se proceda a la formación del inventario y avalúo de los bienes relictos al fallecimiento del testador; que se declare que los hijos naturales que figuran como demandantes y demandados tienen derecho a la participación hereditaria correspondiente y que se ordene al albacea que cumpla con lo dispuesto en la ley.

Contestada la demanda y visto el caso en sus méritos, la Corte de Distrito de Guayama dictó sentencia decretando la nulidad de la institución de herederos, la apertura de la sucesión intestada y declarando sin lugar la demanda en todos sus demás extremos. De esa sentencia apelaron los demandantes y sostienen ahora que la corte inferior erró: (1) al determinar que el testador estaba en el pleno juicio de sus facultades mentales al otorgar el testamento y que el mismo es válido; (2) al declarar válido el legado de la mitad de los bienes a favor de María Bermúdez Pérez y que en pago se le adjudiquen las tres casas que se describen en el testamento; y (3) al reconocer como preferente el crédito de $2,000 de María Bermúdez Pérez.

Los errores señalados por los apelantes nos obligan a examinar la prueba aducida. La evidencia oral ofrecida por ellos se redujo al testimonio del demandante Pedro Ortiz Torres. Éste declaró que su padre, Ramón Ortiz Santiago, trabajó por muchos años con el señor Jenaro Cautiño y que al ser retirado de su empleo se puso como loco; que no dormía, se levantaba de su cama y estaba toda la noche caminando para arriba y para abajo; que a veces lo llamaba a las 3:00, 4:00, 5:00 ó 6:00 de la mañana y le hacía ir con él a esa hora a la finca "La Carlota" del señor Cautiño, donde había trabajado como mayordomo y que allí se ponía a dar órdenes que eran seguidas por los empleados; que su padre se quedó con la manía de ser mayordomo, a pesar de estar jubilado; que antes de retirarse de su empleo generalmente se levantaba como a las tres de la mañana para ir al mismo; y que fué como tres veces con su padre a "La Carlota". Como prueba documental los demandantes presentaron el testamento de Ortiz Santiago, copia certificada de la sentencia dictada en 13 de febrero de 1947 declarando a Mercedes Flores hija natural reconocida del finado Ramón Ortiz Santiago; y copia certificada de una sentencia por estipulación dictada en 19 de enero de 1912, en que se concedían $250 en concepto de daños y perjuicios a la aquí demandada María Bermúdez por la muerte accidental de un hijo suyo.

La prueba de los demandados consistió en el testimonio de Manuel Durán Sellas, oficial de la Sucesion Cautiño,[2] y de Oscar Morera, uno de los testigos del testamento. El primero declaró que el finado Ramón Ortiz Santiago trabajó para Cautiño por espacio de 27 años; que Ortiz Santiago atendía el ganado, la vaquería y la lechería y que cuando lo jubilaron, como 14 ó 15 años antes de su muerte, ya era hombre de alguna edad y por padecer de hernia se le hacía muy incómodo montar a caballo; pero que a pesar de estar jubilado oficialmente, Cautiño lo ocupaba a veces en la vacu-

[2] Para la fecha del juicio ya el señor Cautiño había muerto. No así cuando se otorgó el testamento en 1945.

nación de ganado y cuando había animales enfermos o que castrar novillos, y que eso sucedía cuatro, cinco o seis veces al año, hasta que Ortiz Santiago murió. Oscar Morera testificó que Ortiz Santiago lo mandó a buscar para que le sirviera como testigo en el testamento; que éste fué su vecino y lo conoció durante muchos años y que al firmarse el testamento don Ramón dijo "He cumplido con una misión".

Con la anterior prueba testifical y documental el tribunal inferior, según ya hemos indicado, declaró nula la institución de herederos y sin lugar la demanda en todos sus demás extremos.

██ A tenor de lo provisto por el artículo 108 de la Ley de Evidencia (artículo 470 del Código de Enjuiciamiento Civil, edición de 1933) "La parte que sostiene la afirmativa en la cuestión deberá presentar la evidencia para probarla;" y "todo el peso de la prueba, por lo tanto, recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguno de los contendores."[3] No cumplieron los demandantes con este requisito de ley, pues aún suponiendo que se diera crédito tan sólo a la prueba por ellos presentada, nos hallaríamos con que el decir que el testador Ramón Ortiz Santiago "no dormía y se levantaba de su cama y estaba toda la noche caminando para arriba y para abajo" e iba a la finca "La Carlota" y decía o hacía tal cosa, no demuestra de manera fehaciente que él no estuviera en pleno uso de su razón al momento de otorgarse el testamento. Provee el Código Civil en su artículo 615 (edición de 1930) que "Para apreciar la capacidad del testador se atenderá únicamente al estado en que se halle al tiempo de otorgar el testamento." Sobre el estado mental del testador en el momento mismo de otorgar el testamento, la prueba de los demandantes guarda absoluto silencio. Sea ello como fuere, las actuaciones de Ortiz Santiago según fueron relatadas en la silla de los testigos por su hijo, pudieron tal vez constituir excentricidades, pero distaron mucho de demostrar su insanidad mental. El

---

[3] Véase también *Martínez* v. *Rodríguez,* 26 D.P.R. 6, 9.

tratadista Manresa, en el tomo 5 de sus Comentarios al Código Civil Español, edición de 1932, pag. 338 dice que "No hay que confundir la locura con la simple rareza o excentricidad de carácter del testador. Si así no fuera... ¿cuántos testamentos se salvarían, especialmente hoy, en que ciertos alienistas quieren ver en casi todos los individuos un loco?" Dice, además, el ilustre tratadista a la página 340 de su obra "...que a toda persona ha de reputársela en perfecta lucidez mental y con el pleno goce de sus derechos civiles, mientras no fuere judicialmente declarada incapaz, o se compruebe por un modo evidente la perturbación de sus facultades..." y "...que la integridad mental en orden del derecho de testar es una presunción *juris tantum,* que sólo puede destruirse por una prueba evidente y completa en contrario." Esa prueba evidente y completa brilló por su ausencia en el presente caso.

■■ Pasando al segundo de los errores señalados bastará decir que de conformidad con el artículo 769 del Código Civil, según fué enmendado por la Ley núm. 13 de 29 de marzo de 1945, pág. 39, "Cuando el testador no dejare descendientes ni ascendientes legítimos, los hijos naturales reconocidos tendrán derecho a la mitad de la herencia." Esa mitad de la herencia en favor de los hijos naturales reconocidos fué de manera terminante respetada por el testador. Así se desprende en forma perspicua por la totalidad del testamento y en particular por la cláusula 7 del mismo. Por otra parte, como muy bien indicó el tribunal sentenciador, la preterición de la demandante Mercedes Ortiz Flores, quien con posterioridad a la muerte del testador fué reconocida en pleito de filiación, no anuló la totalidad del testamento sino meramente la institución de herederos. Artículo 742 del Código Civil, edición de 1930; *Ex parte Boerman* v. *Marrero,* 34 D.P.R. 127, 129, 130. Las mandas y mejoras siguieron siendo válidas, a no ser que se demostrara que eran inoficiosas. No hubo prueba de tal cosa en este caso. El legado hecho a favor de la demandada María Bermúdez Pérez no equivalía a otra cosa que a una manda y no se demostró que

fuera inoficioso. Era por tanto válido. *Iturrino* v. *Iturrino,* 24 D.P.R. 467, 475. Al expresar el testador su deseo de que a dicha legataria se entregaran en pago del legado héchole las tres casas que describió en el testamento, él no hizo otra cosa que designar la propiedad específica que interesaba se diera a la legataria en pago de su legado, luego de deducir los tres legados de $200 que también hacía y a que ya hemos hecho mención. No obstante, respetó siempre la otra mitad de la herencia para los hijos naturales reconocidos. Él sólo dispuso de la parte de libre disposición y a ello tenía derecho. Manresa, tomo VI, op. cit., pág. 350.

■ En relación con el tercer error sobre el crédito preferente de $2,000, la única prueba ofrecida por los demandantes lo fué la copia certificada de la sentencia por estipulación dictada, a que ya nos hemos referido. No vemos en verdad cómo esa sola prueba podía convencer a la corte inferior de la inexistencia de la deuda y de que, por el contrario, la única deuda que tenía el finado con dicha María Bermúdez Pérez era la de $200 alegada por los apelantes.

■ Aunque no lo señalan específicamente como error, también insisten los demandantes en que el mencionar el testamento a Pedro Ortiz Flores en vez de Pedro Ortiz Torres anulaba igualmente el mismo. No estamos de acuerdo. Según el artículo 702 del Código Civil, edición 1930, "El error en el nombre, apellido o cualidades del heredero, no vicia la institución cuando de otra manera puede saberse ciertamente cuál sea la persona nombrada." En el presente caso es innegable que, aunque se cometió un error al designar el segundo apellido de este heredero, se sabía a ciencia cierta cuál era la persona nombrada. Véase asimismo, Manresa, Vol. VI, op. cit., pág. 106.

*Debe confirmarse la sentencia apelada.*