AURELIO EMANUELLI FONTÁNEZ y AIDA ALICIA RODRÍGUEZ, demandantes y recurridos, *v.* AMEDEE EMANUELLI SURO, demandado y recurrente.

*Número:* 261      *Resuelto:* 15 de febrero de 1963

---

*Carlos Irizarry Yunqué* y *Rafael Hernández Colón,* abogados del recurrente; *Héctor González Blanes* y *José A. Valero Zayas,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Este pleito se inició para reivindicar tres cuadros de tierra. El predio está localizado en un barrio de Coamo. Las partes poseen dos fincas rústicas que tienen por uno de sus lados como colindancia común un camino vecinal. El predio de la parte demandante tiene una cabida de 73.75 cuerdas. El de la parte demandada una de 200 cuerdas. La controversia surgió con motivo de que, según alega la parte demandante, en una ocasión se varió el camino adentrándose en la finca del demandante. Como consecuencia de esta variante el predio en disputa quedó al lado opuesto del camino y contiguo a la finca de los demandados. Los demandados sostienen que no hubo tal variante.

El juez de instancia formuló la siguiente determinación al dirimir el conflicto evidenciario:

"La evidencia aportada durante la vista del caso reveló que desde el año 1948 en adelante el demandado y sus antecesores en título han venido ejercitando actos de dominio sobre la parcela de setenta y siete céntimos de cuerda que forma parte de la finca Passalacqua pero que quedó separada del cuerpo de ésta al hacerse la variante en el camino de Santa Catalina."

La anterior determinación resuelve el conflicto de la prueba a favor de los demandantes y deja sin base la defensa de prescripción adquisitiva formulada por la parte demandada.

Al finalizar la vista del caso la parte demandada solicitó una inspección ocular. Fue denegada. Se apunta como error esa resolución.

■ En *Martínez* v. *Rodríguez*, 26 D.P.R. 6 (1917) invocando las disposiciones de los Arts. 1169, 1194 y 1195 (1) del Código Civil—31 L.P.R.A. secs. 3262, 3311 y 3312—resolvimos que en casos civiles procedía la inspección ocular. Luego de citar las referidas disposiciones expresamos:

"La Ley de Evidencia de 9 de marzo de 1905 no es inconsistente con estas disposiciones. Puesto que la inspección personal es, por consiguiente, un medio de prueba debe practicarse en presencia de las partes o de sus abogados, a quienes debe

---

(1) Leen así:

Art. 1169:

"Las pruebas pueden hacerse: por instrumentos, por confesión, por inspección personal del tribunal o juez, por peritos, por testigos y por presunciones."

Art. 1194:

"La prueba de inspección personal del tribunal o juez sólo será eficaz en cuanto claramente permita al tribunal apreciar, por las exterioridades de la cosa inspeccionada, el hecho que trate de averiguar."

Art. 1195:

"La inspección practicada por un tribunal o juez podrá ser apreciada en la sentencia que otro dicte, siempre que el primero hubiera consignado con perfecta claridad en la diligencia los detalles y circunstancias de la cosa inspeccionada."

dárseles una oportunidad para explicar o añadir lo que estimen conveniente al resultado de la inspección. Del propio modo la corte debe levantar una acta de la inspección ocular."

Ver además *Lampón* v. *Línea Romero,* 60 D.P.R. 212 (1942).

La inspección ocular como medio de prueba fue reconocida en las Partidas del Rey Alfonso. Disponía la Ley VIII del Título XIV de la Tercera Partida, al enumerar las clases de prueba que:

"Otrosi hay otra natura de prueba asi como por vista del judgador veyendo la cosa sobre que es la contienda: et esto serie quanto contendiesen las partes ante el judgador sobre términos de villas ó de otros heredamientos; . . ."

Scævola en su *Código Civil,* Tomo 201, pág. 369 (Madrid 1904) expone sobre el reconocimiento judicial lo siguiente:

"Es un medio de prueba—dice García Goyena—el del reconocimiento judicial, de los más preferibles. Otros autores estiman que el Juez, constituido en presencia de la cosa sobre que se litiga y examinando por sí mismo su exterioridad, tiene la consideración de un testigo, pero de un testigo imparcial y sereno como ninguno, que asiste con la mejor buena fe y con el mayor espíritu de acierto, dispuesto a no dejarse impresionar en sentido favorable ni adverso a ninguna de las dos partes, y en condiciones, por lo tanto, de aportar al litigio un elemento de juicio seguro y definitivo. Tiene además el mérito esta prueba de que como las circunstancias que han de servir para la apreciación se consignan en el propio momento de tenerlas delante y con cuantos pormenores son precisos, en vista de los términos en que la cuestión ha sido judicialmente planteada, es pequeño el peligro, frecuente en todas las demás pruebas testimoniales o análogas, de que el tiempo pasado, la confusión de los detalles, inspiren, aparte de la mala fe, errores lamentables que puedan traducirse en resoluciones injustas."

La observación directa del juez de la cosa en controversia es generalmente aceptada como medio de prueba eficaz e imparcial. Es el hecho, la cosa hablando por sí misma, con la oportunidad a las partes de explicar cualquier circunstancia que entiendan debe aclararse. Ver: De la Plaza, *Derecho*

*Procesal Civil Español,* Vol. I, pág. 518 (3ra. ed. Madrid 1951) ; Lessona, *Teoría General de la Prueba en Derecho Civil,* Tomo 5, pág. 7–30 (Madrid 1942) ; Spota, *Tratado de Derecho Civil,* Tomo I, Vol. 3, pág. 875 (Buenos Aires 1958).

■ El hecho de que la ley establezca como medio de prueba el reconocimiento judicial, no impone al juez la obligación de practicar la inspección. En asuntos criminales reiteradamente hemos resuelto que la concesión de una inspección ocular descansa en la sana discreción del tribunal sentenciador. *Pueblo* v. *Rivera,* 77 D.P.R. 664 (1954) ; *Pueblo* v. *García,* 66 D.P.R. 504 (1946).

Así lo entiende Manresa. Comentando los artículos correspondientes del Código Civil Español a los Arts. 1169, 1194, 1195 nuestros, sostiene:

"La lectura de los preceptos que estamos comentando, revela claramente cuáles son su carácter y alcance. Concediendo una facultad, sin convertirla nunca en imposición, y limitando su ejercicio, no obligan á aceptar forzosamente el resutado de esta prueba, y en cambio se oponen á que se admita aquélla en algún caso, ya porque no procediera según en art. 1240, ya porque, aun procediendo, no pudiera hacerse la apreciación por el juez ó tribunal sentenciador, según el art. 1241. Son, por tanto, disposiciones que pueden infringirse por admitir prueba, no por dejar de atribuir eficacia á la practicada."

*Lessona,* en la obra arriba citada a la pág. 17, expone:

"Todavía añadiremos que en Francia, doctrina y jurisprudencia acordes, consideran al juez siempre con facultad para rechazar el reconocimiento, aunque haya sido solicitado a instancia de las partes, lo que, por otra parte, responde a los principios generales de la prueba."

■ Esto no obstante, el juez al resolver sobre una petición de inspección debe actuar con informada discreción. Debe tener presente el interés que tiene todo litigante en que el juez conozca todos los detalles del caso. Y el juez, a menos que sea completamente innecesario, o le ocasione

trastornos insuperables a la administración de la justicia, debe estar presto a brindarle a las partes la oportunidad de que le presenten toda la prueba legalmente admisible. Es la forma en que el litigante que sale derrotado puede quedar un poco más satisfecho. El juez le ha oído. Y al impartir justicia debe ser preocupación de todo juez no sólo resolver de acuerdo con la ley y los dictados de su conciencia, sino también trasmitirle a las partes el convencimiento de que verdaderamente han tenido un día en corte.

■ Si examinamos las determinaciones de hecho formuladas por el juez de instancia, razonablemente puede concluirse que la inspección ocular, de haberse practicado, no hubiera alterado la disposición que finalmente hizo del caso. El juez de instancia, ya hemos dicho, le dio crédito a la prueba de la parte demandante. Esta prueba estableció que en la segunda década del siglo se varió el camino que separaba las fincas de los litigantes y que para variarlo se tomó terreno de la finca que hoy pertenece a los demandantes, quedando la parcela en controversia del lado de la finca de los demandados. Y en sus determinaciones establece que "el testigo Joaquín Aponte ofrecido por la parte demandada [expresó] que en el camino de 'Santa Catalina' existía un trecho o 'trillo' por encima de la pendiente o barranca, utilizándose el mismo para el paso de peatones". Este es el trillo que la prueba de los demandantes afirma que era la trayectoria del antiguo camino antes de que se variara. Así, si el juez hubiera acudido al lugar en controversia, hubiera observado ese trillo—la propia prueba de la demandada establece que existe—y ese hecho corrobora la prueba adversaria de que por ahí era que estaba trazado el camino anteriormente.

Citando nuevamente del Tratado de *Lessona*, a la pág. 29 expresa:

"El rechazar el reconocimiento judicial pedido, puede depender también del hecho de que otras pruebas ya practicadas hagan imposible el que se controvierta más el hecho discutido, lo que, como sabemos, es regla general."

Es evidente que al negar la inspección ocular solicitada no abusó de su discreción el juez de instancia.

■ La parte recurrente levanta la cuestión de que el tribunal sentenciador carecía de "jurisdicción" y que por tanto la sentencia dictada es nula. La disposición constitucional al efecto de que "[l]os tribunales de Puerto Rico constituían un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración," Art. V, sec. 2, Constitución del Estado Libre Asociado y lo establecido en la Sec. 10 de la Ley de la Judicatura disponen de esta contención. El caso se radicó en el Tribunal Superior, el tribunal conoció del mismo y las partes no objetaron. *Ramírez* v. *Ramírez*, 80 D.P.R. 518 (1958).

*Procede confirmar la sentencia que dictó el Tribunal Superior, Sala de Ponce, de fecha 30 de octubre de 1959.*