Manuel García Reyes, demandante y recurrente, *v.* Sociedad Mario Mercado e Hijos y Mario Mercado Riera, demandados y recurridos.

Número: R-62-296     Resuelto: 11 de diciembre de 1964

545

*Rafael Hernández Colón,* abogado del recurrente; *Pedro M. Porrata,* y *Charles R. Cuprill,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

En las postrimerías de la pasada centuria y para facilitar la construcción de ferrocarril de circunvalación de la Isla, Dimas de Ramery cedió gratuitamente a la empresa ferroviaria una parcela de terreno segregada de una finca de mayor cabida denominada "Ojo del Agua" que poseía en el Barrio Canas del término municipal de Ponce. El lecho de la vía se tendió en la parcela cedida. La parcela no fue inscrita en el

Registro de la Propiedad. En 1906 los herederos de Ramery vendieron el remanente de la finca principal a los señores José Trujillo y Mario Mercado. En el año 1950 la compañía explotadora del ferrocarril inició la tramitación de un expediente de dominio sobre la parcela cedida por Ramery. Se dictó resolución en el año 1953. Al cesar de funcionar el ferrocarril, los terrenos de la compañía explotadora del mismo fueron adquiridos por una corporación denominada Puerto Rico Railroad Land & Development Company, Inc. La parcela cedida por el señor Ramery fue inscrita en el Registro de la Propiedad en virtud de la resolución recaída en el expediente de dominio con la siguiente descripción:

"RÚSTICA: Parcela de terreno radicada en el Barrio Cuchara del Término Municipal de Ponce, con cabida de QUINCE MIL CUATROCIENTOS OCHENTA Y UN metros cuadrados de supercie (15,481) comprendidos del kilómetro 266.868 al kilómetro 268.836 de la línea general del ferrocarril de San Juan a Ponce, colindando por el Norte con la Carretera Insular número Treinta y Seis; *por el Sur con la zona marítima* y terrenos de la Autoridad de Tierras; y por el Este y Oeste con el parcelario de la vía de la Compañía de los Ferrocarriles de Puerto Rico." (Énfasis suplido.)

La Puerto Rico Railroad Land & Development Company, Inc. vendió la parcela a Manuel García Reyes por la suma de $1,548.10. En un convenio anterior al otorgamiento formal de la escritura de compraventa, las partes convinieron "en efectuar inmediatamente una mensura de dicha FINCA para determinar su cabida real, estipulándose que el precio de venta aquí anteriormente consignado será aumentado o disminuido para conformarlo al precio de $0.10 por metro cuadrado de terreno vendido. Cualquier cantidad adicional que se requiera para completar el precio reajustado de la venta, como resultado de dicha mensura, será pagado inmediatamente por el COMPRADOR a la VENDEDORA, la cual conviene a su vez en devolver al COMPRADOR cualquier cantidad que hubiere recibido en exceso de dicho precio

reajustado. El COMPRADOR ha depositado con la VEN-
DEDORA la suma de $75.00 para cubrir su parte propor-
cional de los gastos de la mensura aquí convenida." La men-
sura no se efectuó.

El propósito de García Reyes al adquirir la parcela
mencionada fue lotificar la misma para vender solares a
varias personas que habían fabricado en los terrenos al Sur
de la vía durante los últimos años, antes de cesar de operar
el ferrocarril. Estando en estas gestiones, García Reyes recibió
una comunicación de uno de los abogados de la Sociedad
Mario Mercado e Hijos informándole "que la parcela que se
encuentra al Sur de la vía del ferrocarril donde se encuentra
la casa de doña Lolita Berio y Doña Valentina Monforte
forma parte de la Hacienda Ojo del Agua, finca que fuera
adquirida por la familia Mercado en el año 1906". La socie-
dad mencionada se dirigió a varias de las personas que tenían
casas en la parcela y les advirtió que García Reyes no era
dueño del terreno.

Presentes estas circunstancias, García Reyes inició un
pleito en relamación de daños. y perjuicios contra Mario
Mercado e Hijos. Alegó que la actuación de la entidad deman-
dada le había obstaculizado el negocio que tenía con la parce-
la recientemente adquirida y que su reputación había sido
afectada. En la demanda alegó "que la sociedad Mario Mer-
cado e Hijos y/o Mario Mercado Riera, sin justificación legal
para ello, hicieron saber por medio de sus agentes autoriza-
dos a las personas que estaban contratando con el señor
Manuel García Reyes, y al público en general, que la parcela
antes descrita no pertenecía al señor García Reyes".

En la contestación a la demanda la sociedad "acepta que
la P.R. Railroad Land & Development Company, Inc. vendió
al demandante la parcela descrita en el párrafo primero de
la demanda, pero niega que la misma colinde en la parte Sur
con terrenos de la zona marítima y expresamente se alega que
la faja de terreno a que se hace referencia en la escritura de

compra, está limitada a la servidumbre de paso que tenía la antigua compañía del ferrocarril de Puerto Rico sobre los terrenos de la Hacienda 'Ojo del Agua' propiedad anteriormente de la familia Ramery y desde el año 1906 de la Sociedad Mario Mercado e Hijos, y no le da título alguno al demandante sobre el remanente del terreno entre dicha servidumbre y el mar". En otras palabras, se levantó como defensa la falta de título del demandante sobre la parte de la parcela que se encuentra entre la llamada "servidumbre de paso" y la zona marítima.

El tribunal desestimó la acción de daños fundándose, entre otras cosas, en que "la demandada Mario Mercado e Hijos es dueña y tiene posesión como lo tuvieron siempre sus antecesores en título de los terrenos al Sur de la faja adquirida por el demandante. Habiendo comprado el demandante por unidad de medida solamente tiene título sobre 15,481 metros cuadrados de terreno que están comprendidos entre el km. 266.838 al 268.836 de la línea general del ferrocarril de San Juan a Ponce". En otras palabras, de hecho el tribunal adjudicó el título de unos terrenos a la firma Mario Mercado e Hijos. La parte demandante en el recurso de revisión no ha discutido la desestimación de la acción de daños[1] y se ha limitado a plantear la cuestión de título, por la importancia que reviste tal adjudicación.

■ Así, la acción ejercitada por García Reyes se ha convertido a todos los fines prácticos, en una de sentencia declaratoria para determinar el título sobre unos terrenos. Así lo reconoce la demandada Mario Mercado e Hijos cuando en su alegato ante este Tribunal afirma que "[d]e todos modos no

_____

[1] Al desestimar la acción el juez formuló la siguiente conclusión de derecho:

"La malicia es un elemento esencial de la acción de daños y perjuicios por difamación de título y no puede prosperar la reclamación cuando como en este caso hay total ausencia de prueba en cuanto a ese extremo. Anotación 129 ALR 179 'Malice as element of action for slander of title.' Véase, además, 39 ALR 2nd 846."

puede haber dudas ante este Honorable Tribunal que en este caso se le planteó al tribunal inferior una controversia sobre títulos . . .". Como señalamos, ésa fue la determinación básica del tribunal sentenciador. La evidencia presentada por las partes se dirigió primordialmente a establecer su título sobre la parcela de terreno entre la llamada "servidumbre de paso" y la zona marítima. Sin embargo, tratándose de una defensa interpuesta por la demandada a ella correspondía el peso de la prueba para establecer su título e impugnar la resolución recaída en el expediente de dominio.

La prueba establece que García Reyes adquirió la parcela antes descrita con el fin de lotificarla y vender los solares a las personas que en ellos tenían enclavadas sus casas. En el documento traslativo de dominio se describió la parcela con una cabida de 15,481 pero una mensura posterior demostró según manifestó el testigo Carlos Clavell que la verdadera cabida era de cerca de 20,000 metros cuadrados, 4,519 metros cuadrados de diferencia. La posición del demandado es en el sentido de que el exceso de cabida, bien sea de 4,519 metros cuadrados, o en exceso de esa cantidad, le pertenece.

Analicemos la prueba presentada. El demandante presentó la escritura de adquisición debidamente inscrita. Mediante ella adquirió una parcela con límites y colindancias determinadas y con una cabida de 15,481 metros cuadrados al precio de 10 centavos por unidad métrica. La parcela pertenecía a la compañía del ferrocarril. Un empleado de esa empresa testificó que conocía el inmueble desde el año 1929. Manifestó que siempre la compañía había estado en posesión del terreno comprendido entre la vía y el mar; que nunca se había cercado entre la vía y el mar. Se refirió al plano de la vía del ferrocarril que fue presentado en evidencia por el demandante, y afirmó que del mismo surgía que la parcela cedida no tenía límite de ancho. Realizada una inspección ocular [2]

---

[2] Aparentemente no se levantó un acta de inspección ocular. Véase *Emanuelli Fontánez* v. *Emanuelli Suro*, 87 D.P.R. 380 (1963).

por el tribunal es interesante apuntar que el testigo manifiesta que para el tiempo en que él trabajaba para el ferrocarril "había menos terreno"; "era más estrecha la parte del terreno". Tal parece que el mar se había retirado incrementando la cabida de la parcela, según afirmó este testigo.

Además el demandante presentó evidencia para demostrar que Mario Mercado e Hijos inició pleitos de desahucio contra las personas que tenían casas en los terrenos al Sur de la vía. (³)

La sociedad trató de establecer su título con los siguientes elementos de prueba: (1) el hecho de haber autorizado a distintas personas a construir casas en los terrenos en litigio; (2) el pago de contribuciones territoriales sobre la parcela en cuestión; (3) el testimonio de su administrador al efecto de que la sociedad había estado en posesión de los terrenos desde tiempo inmemorial; (4) la escritura de adquisición de la finca Ojo del Agua en la cual aparece el mar como colindancia sur; (5) la resolución de la Corte de Quiebras rehusando garantizarle la posesión de la parcela a la antecesora en título del demandante.

Según aparece de su opinión, evidentemente la primera consideración que se tuvo en cuenta por el tribunal de instancia para dictaminar que "Mario Mercado e Hijos es dueña y tiene posesión como lo tuvieron siempre sus antecesores en título de los terrenos al Sur de la faja adquirida por el demandante" fue la conclusión de derecho al efecto de que "[h]abiendo comprado el demandante por unidad de medida solamente tiene título sobre 15,481 metros cuadrados de terreno que están comprendidos entre el km. 266.838 al 268.836 de la línea general del ferrocarril de San Juan a Ponce". Los otros factores considerados por el juez al hacer su determinación fueron los siguientes:

---

(³) El propósito de esa evidencia era probar la alegación del demandante al efecto de que "la demandada . . . maliciosamente ha radicado acciones de desahucio contra ciertas personas que detentan la propiedad del demandante."

(a) El hecho de que "en esa parcela al Sur de la faja de terreno adquirida por el demandante, Blas Oliveras, Aníbal Nieves, Eloy Bosch Sabater, Valentina Monforte, Lolita Berio y Antonio Rullán han construido casas con autorización de Mario Mercado e Hijos desde hace años".

(b) La circunstancia, según el Tribunal, de que "En el Departamento de Hacienda de Puerto Rico los terrenos al Sur de la vía aparecen a nombre de Mario Mercado quien paga las contribuciones sobre la propiedad sobre dichos terrenos. La Puerto Rico Railroad and Transport Company no pagó contribuciones, tributaba el resto de la finca (Véase testimonio de Carlos Archeval)."

(c) El hecho de que cuando la familia Mercado adquirió la finca Ojo del Agua en el año 1906 el inmueble se describió así en la escritura de adquisición:

"ESTANCIA sita en el barrio de 'Canas' término municipal de Ponce y sitio denominado 'Ojo del Agua', de quinientas cuerdas de extensión poco más o menos, equivalentes a ciento noventa y seis hectáreas, cincuenta y una áreas y noventa y ocho centiáreas, conteniendo dos casas techadas de palma y un pozo con su brocal. Linda por el Sur, con el Mar, y por los otros vientos con José del Toro Gandía, antes, hoy con los señores Trujillo y Mercado, los señores Valdivieso Hermanos y Ramón Cortada. Inscrita al folio 135 del tomo 15 de Ponce."

(d) El hecho de que "Con fecha 1 de julio de 1958 José M. Feliciano, Trustee en Quiebra de Puerto Rico Railroad and Transport Company compareció ente la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico en el caso 2077 de quiebra solicitando una orden del Tribunal contra Blas Oliveras, Jr., Valentina Monforte, María Mercado y Charles R. Cuprill, para que estas personas entregaran posesión del terreno objeto del compromiso de compraventa entre el demandante y la P.R. Railroad Land and Development Company, Inc. y su petición fue desestimada por resolución de 19 de agosto de 1958 por existir evidencia que las per-

sonas mencionadas estaban en posesión con anterioridad al procedimiento de quiebra."

Consideremos en primer término el criterio expuesto por el tribunal de instancia al efecto de que por haberse comprado la parcela por unidad de medida el demandante solamente tiene título sobre la cantidad de metros específicamente mencionada en el contrato.

Aparte del hecho de que las partes estaban conscientes de que el número de metros cuadrados expresados en el contrato como constitutivos de la cabida del inmueble objeto de la transacción estaba sujeto a rectificación, según se evidencia por la cláusula antes transcrita mediante la cual se convino en medir el inmueble, lo cierto es que el Código Civil en su Art. 1359, 31 L.P.R.A. sec. 3819, expresamente establece que "si resultare mayor cabida o número en el inmueble que los expresados en el contrato, el comprador tendrá la obligación de pagar el exceso de precio si la mayor cabida o número no pasa de la vigésima parte de los señalados en el mismo contrato; pero si excediere de dicha vigésima parte, el comprador podrá optar entre satisfacer el mayor valor del inmueble, o desistir del contrato". La ley pues, reconoce el título al comprador sobre el exceso de cabida que resulte, pero mantiene que el vendedor puede reclamar el valor del exceso si el mismo no pasa de lo establecido en el Código. Y al comprador se le concede la prerrogativa de desistir del contrato si el exceso de cabida pasa del límite estatuido en la ley. Manresa, *Código Civil Español*, Tomo 10, págs. 177 y 178 (ed. 1950) al comentar el Art. 1470 del Código Civil español que corresponde al nuestro. Scaevola, *Código Civil*, Tomo 23, pág. 498 (ed. 1906). En todo caso la circunstancia de la existencia de un exceso de cabida en nada beneficiaría a Mario Mercado e Hijos. La única persona que tendrá acción—a los fines de reclamar el precio del exceso—sería la Puerto Rico Railroad and Transport Company.

Cuando en el año 1906 la familia Mercado adquiere la finca Ojo del Agua se consignó su colindancia Sur con el Mar. Así aparece en el Registro de la Propiedad. Pero ello se explica fácilmente si se toma en cuenta que la parcela segregada y cedida a la empresa ferroviaria no había sido inscrita. Tampoco se consignó la constitución de servidumbre alguna. Si en verdad la parcela cedida por el señor Ramery en el año 1891 se extendía hasta el mar, el hecho de que en el Registro en el año 1906 apareciera el resto de la finca como colindante con el mar no es un factor decisivo.

■ Apunta el tribunal sentenciador que la firma Mercado pagaba las contribuciones sobre los terrenos al sur de la faja comprada por el demandante. Sin entrar a considerar si el pagar contribuciones al erario sobre un predio de terreno es factor a considerarse para establecer título, lo cierto es que al analizar la declaración del testigo Archeval de la misma no surge que Mario Mercado e Hijos pagara contribuciones sobre terrenos al sur del predio comprado por el demandante. La declaración de Archeval fue al efecto de que "nosotros cuando recibimos órdenes de Tasación para tasar la propiedad en todo ese terreno, pues tuvimos que sacar aparte el parcelario de la vía para . . . porque el parcelario de la vía no pagaba contribuciones porque pertenecía a la Puerto Rico Transport que estaba exenta de contribuciones por ley. Entonces esa faja hubo que sacarla aparte para poner a tributar el resto de la finca". Luego de haber expresado lo anterior sigue así el interrogatorio del testigo:

"DEMANDADOS:

Señor Archeval, ¿bajo . . . de acuerdo con su investigación y conocimiento, cuál era el ancho de la faja de terreno?

Bueno, esa faja de terreno exactamente no recuerdo el ancho, pero presumo que tiene un ancho de siete a ocho metros.

¿De siete a ocho metros?

Sí señor. Calculando.

¿Eso era la faja de terreno, el parcelario de la vía?

Que lo sacamos fuera de los demás terrenos.

¿Usted sabe si al sur de la parcela, de la vía—de acuerdo con su investigación—existe algo allí en el sitio?

TESTIGO:

Bueno, en ese sitio existe una faja de terreno irregular que en unos sitios es más ancha y en otros más estrecha.

DEMANDADOS:

¿Dígame, señor Archeval, quien es la persona que paga las contribuciones sobre esa faja de terreno que aparece al sur del parcelario?

La faja de terreno radicada al sur del parcelario de la vía, aparece a nombre de Mario Mercado y es él quien paga las contribuciones de la propiedad.

¿Eso tiene alguna identificación en el récord de su departamento?

Para los efectos de identificación . . .

¿Eso forma parte de una finca?

Forma parte de la Hacienda Matilde.

LA CORTE:

¿Hacienda qué?

TESTIGO:

Matilde."

El testigo se refirió a la Hacienda Matilde. La parcela en controversia era parte de la finca Ojo del Agua y del récord surge que son dos fincas distintas. (Declaración del Administrador de Mario Mercado e Hijos a la pág. 47 de la Transcripción de Evidencia, III Pieza.)

El hecho de que la firma Mercado concediera permiso a un número de personas para construir casas en los terrenos en controversia no es importante para determinar título cuando de la prueba de la parte demandada surge que ese permiso se dio en el año 1954 y este pleito se inició en el año 1960.

La resolución de la Corte de Quiebras no tiene importancia alguna. Solamente consignaba que la P.R. Transport no podrá lanzar a los detentadores de la parcela por ser el origen de la posesión de éstos anterior a la iniciación del procedimiento de quiebra.

■ El hecho de haber iniciado pleitos de desahucio no tiene relevancia en la determinación de título. Es más, fue el propio demandante el que presentó esa prueba para demostrar la perturbación de que era objeto por parte de la firma Mercado. Véase *Khon* v. *Martínez*, 40 D.P.R. 40 (1929).

Nos resta ahora considerar la declaración del Administrador de la sociedad demandada para poder determinar si la misma es suficiente para impugnar la resolución recaída en el expediente de dominio y dejar establecido el título de Mario Mercado e Hijos sobre los terrenos en controversia. El Administrador declaró en el interrogatorio directo que Mario Mercado e Hijos ha estado en posesión del terreno litigado desde tiempo inmemorial. En la repregunta manifestó que la sociedad que representa es dueña de 11,738 cuerdas con 73 céntimos de otra; que conoce todas las fincas, que las ha visitado todas; que por primera vez en el año 1948 el mayordomo de la finca Ojo del Agua don Ramón Rodríguez o tal vez Atanasio Mercado, no recuerda bien, le informaron que la parcela en controversia al Sur de la vía, pertenecía a la firma Mercado; que en el año 1954 fue que la firma dio permiso a varias personas para construir casas en los terrenos [4] Cuando se le pregunta qué actos de dominio había realizado la sociedad que él representa sobre los terrenos en litigio, específicamente con anterioridad al año 1954, manifiesta contestando la siguiente pregunta:

Pregunta: "¿Debo entender que con anterioridad al 1954 ustedes no la cercaban, ni sembraban, ni desyerbaban, ni ejercían acto?

Contestación: "Lo vigilábamos."

Y al explicar por qué se limitaba a mera vigilancia expresa:

"Sí, señor, porque es un terreno que no tiene ninguna fertilidad. Si en alguna ocasión se necesitaban algunas varas, se cor-

---

[4] A fines del año 1954 la compañía ferroviaria radicó petición de quiebra voluntaria ante la Corte de Distrito de los Estados Unidos.

taban de allí, o, se traían del monte. Si eran esos terrenos parte tan conspicua; pero, después, en el año 37, se pasó una carretera por allí, que no había una carretera, que eso era un monte entremedio del cual estaba el ferrocarril pasando. Antes era la número 36."

Preguntado si después que se construyó la carretera se limitaba a vigilar la parcela contesta:

"Yo tendría que hacer memoria. A veces se sacaba alguna paja de escoba y varas, que se sacaba a los montes inmediatamente para arriba, pero, subiendo. En eso puedo asegurar que de la Matilde se sacaron varas para ranchones y casetas."

Lo anterior, hemos expresado, se refería al período con anterioridad al año 1954 cuando se construyeron por primera vez las casas en la parcela. Con posterioridad al año 1954, manifiesta cuando se le pregunta sobre actos de dominio ejercidos por la firma Mercado:

"Debí haber hecho acto de dominio. Los abogados lo recomendaron repetidas veces porque no obstante, la gente había penetrado esos terrenos. Una vez le dimos el consentimiento escrito por virtud de escritura de arrendamiento a don Serafín Feliciano, de colocar la casa que tenía allí, que hoy tiene . . . es de doña Valentina Monforte."

■ En resumen la prueba presentada para justificar el título de la Sociedad Mario Mercado e Hijos e impugnar la resolución recaída en el expediente de dominio, establece que el Administrador de la firma tuvo conocimiento de que los terrenos en disputa pertenecían a la finca Ojo del Agua por información que le suministrara el mayordomo de esa finca en el año 1948. Con anterioridad al año 1954 el único acto de dominio realizado por la sociedad, fue el de vigilar el terreno y que con posterioridad al año 1954, cuando se autorizó a construir unas casas en el predio de terreno, no realizaron actos de dominio. "Debí haber hecho acto de dominio" manifiesta el testigo al declarar.

Claramente esta prueba no es suficiente para adjudicar el título de los terrenos a Mario Mercado e Hijos. Con ello no puede impugnarse la resolución en el expediente de dominio. (5)

Cuando en el año 1891 Dimas de Ramery cedió a la empresa ferroviaria una parcela de terreno para tender la vía evidentemente esa era una parcela de escaso valor. Tenía dos mil metros de largo y consistía de terrenos que como afirmó casi sententa años después el declarar en el juicio el Administrador de Mario Mercado e Hijos "es un terreno que no tiene ninguna fertilidad". En la época que fue cedido, la construcción del ferrocarril redundaba en beneficios para el resto de la finca. Es razonable concluir que la cesión incluía los terrenos hasta el mar. Eran de escaso valor, el área era pequeña en cuanto a su fondo (6) y mantenerlos cercados hubiera sido muy costoso. No se concibe que en aquella época el señor Ramery interesara retener unos terrenos que no tenían valor, separados completamente del resto de la finca por vía del ferrocarril y que cercarlos y administrarlos le hubiera costado más que el valor de los mismos.

*Por todo lo expuesto procede confirmar aquella parte de la sentencia que declaró sin lugar la reclamación de daños, pero procede modificar la misma en el sentido de declarar que el demandante Manuel García Reyes es dueño en pleno dominio de la totalidad de los terrenos comprendidos en los linde-*

---

(5) Tampoco presentó la parte demandada evidencia para describir e identificar el terreno que se reclama. La prueba estableció que la parcela tiene una forma irregular "en cuanto a la orilla del mar es completamente irregular" hay sitios donde se llega hasta cerca de la vía y hay sitios donde se abre más. Se requiere una descripción adecuada para que pueda ejercitarse la sentencia si prevaleciera la contención de la demandada. Cf. *Sevilla* v. *Cía. Azucarera del Toa,* 69 D.P.R. 249 (1948). Al presentarse en evidencia unos planos por la demandada el demandante se opuso a los mismos por no haber tenido la oportunidad de contrainterrogar a la persona que los levantó.

(6) Hemos visto que un testigo afirmó cuando se celebraba la inspección ocular que en esa fecha había más terreno. Evidentemente el mar durante setenta años necesariamente afectó la cabida.

*ros con que aparece descrita la parcela en la resolución recaída en el expediente de dominio e inscrita en el Registro de la Propiedad. Se eliminará la condena de honorarios.*