ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JLL PUERTO RICO REALTY & CO., S en C**<br><br>Apelados<br><br>v.<br><br>**INMOBILIARIA SANTURCE, INC.; QUINTANA HOLDING, CORP.**<br><br>Apelantes | KLAN202300889 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Civil Núm.: **CA2023CV00676**<br><br>Sobre: Cobro de Dinero Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 23 de febrero de 2024.

Comparecen Inmobiliaria Santurce, Inc. (Inmobiliaria) y CCVA, Inc. (CCVA) (en conjunto, la parte apelante) y nos solicitan revocar una *Sentencia Parcial* emitida el 23 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[2] Por virtud del aludido dictamen, el TPI desestimó parcialmente la acción contra Quintana Holding, Corp. (Quintana) y determinó que Inmobiliaria debía pagar una suma de doscientos cuarenta y nueve mil setecientos sesenta y nueve dólares con treinta centavos ($249,769.30) a JLL Puerto Rico Realty & Co., S en C (JLL).

Por los fundamentos que exponemos a continuación, revocamos en parte la *Sentencia Parcial*, a los efectos de declarar No Ha Lugar a la solicitud de sentencia sumaria de JLL.

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Nery E. Adames Soto.
[2] Apéndice del *Recurso de Apelación*, Anejo I, págs. 1-19. Archivada y notificada en autos el 25 de septiembre de 2023.

Veamos los antecedentes fácticos y procesales que sostienen nuestra determinación.

-I-

El caso de epígrafe dimanó el 6 de marzo de 2023, fecha en la que JLL incoó una *Demanda* contra Inmobiliaria y Quintana por cobro de dinero e incumplimiento de contrato.[3] En esta, adujo que el 11 de junio de 2020, suscribió un contrato de arrendamiento (Contrato) con Inmobiliaria y Quintana, para que JLL actuara como agente exclusivo de ambas corporaciones en el arrendamiento de locales en los centros comerciales Santa María Shopping Center en Guaynabo; Laguna Gardens Shopping Center en Carolina; Villa Fontana Shopping Center en Carolina; Plaza Salinas en Salinas; Montesol Shopping Center en Fajardo y La Quinta Shopping Center en San Germán. Además, alegó que se pactó una comisión de seis por ciento (6%) al obtener un nuevo arrendamiento si participaba otro corredor de bienes raíces y cuatro por ciento (4%) si no intervenía otro corredor de bienes raíces, y una comisión de cinco por ciento (5%) en las renovaciones de arrendamientos cuando colaboraba otro corredor de bienes raíces y dos punto cinco por ciento (2.5%) al no intervenir otro corredor de bienes raíces. Arguyó que brindó servicios bajo el Contrato y emitió las correspondientes facturas a Inmobiliaria y Quintana. Esgrimió que, en relación con una factura, Inmobiliaria y Quintana realizaron tres (3) pagos parciales de treinta y cinco mil dólares ($35,000.00), cuatro mil quinientos dólares ($4,500.00) y cuatro mil setecientos cincuenta dólares ($4,750.00).[4] No obstante, sostuvo que Inmobiliaria y Quintana adeudaban una suma de ciento cuarenta mil seiscientos veintiocho dólares con noventa y nueve centavos ($140,628.99) por

---

[3] *Íd.*, Anejo II, págs. 20-23.
[4] Notamos en dos (2) certificaciones de pagos acompañadas en la *Demanda*, que el 9 de diciembre de 2021, CCVA emitió un pago de $35,000.00 a favor de JLL en relación con la factura PR003RE000262 y el 21 de diciembre de 2020, CCVA emitió un pago de $4,750.00 a favor de JLL, con respecto a la misma factura.

concepto de servicios facturados a tenor con el Contrato, respondiendo a catorce (14) facturas, desglosadas a continuación:

| Factura | Fecha | Cuantía | Lugar de servicios de arrendamiento facturados por JLL |
|---------|-------|---------|-------------------------------------------------------|
| PR003RE000262 | 28-jul-2021 | $69,064.40 | **Centro Gran Caribe Mall** en Vega Alta, China District LLC |
| PR003RE000291 | 23-sep-2021 | $6,906.43 | **Centro Gran Caribe Mall** en Vega Alta, China District LLC |
| PR003RE000294 | 11-oct-2021 | $3,120.00 | **Centro Gran Caribe Mall en Vega Alta** |
| PR003RE000307 | 3-nov-2021 | $27,625.77 | **Centro Gran Caribe Mall** en Vega Alta, China District LLC |
| PR003RE000309 | 4-nov-2021 | $3,120.00 | **Centro Gran Caribe Mall en Vega Alta** |
| PR003RE000320 | 8-dic-2021 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000326 | 14-dic-2021 | $6,552.00 | Champs Sports, **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000337 | 10-ene-2022 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000345 | 27-ene-2022 | $15,238.39 | Capri, **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000349 | 7-feb-2022 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000367 | 3-mar-2022 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000379 | 6-abr-2022 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000388 | 6-may-2022 | $3,120.00 | **Centro Gran Caribe Mall** en Vega Alta |
| PR003RE000418 | 15-jul-2022 | $34,532.20 | **Centro Gran Caribe Mall** en Vega Alta, China District LLC |

Igualmente, JLL alegó que el 30 de noviembre de 2022, cursó una carta de cobro a Inmobiliaria y Quintana en relación con los servicios reclamados en la *Demanda*. Por otro lado, manifestó que el 1 de diciembre de 2022, el señor Rafael Pérez Diez, presidente de Inmobiliaria, se comunicó con su representante legal para aceptar la deuda y solicitar un arreglo de pago.

JLL aseveró que el 11 de enero de 2023, cursó una carta al señor Pérez Diez para proponerle que Inmobiliaria y Quintana firmaran una sentencia por consentimiento en la que admitieran la deuda y se obligaran a un plan de pago que no excediera de seis (6) meses, a cambio de renunciar a los intereses acumulados. En dicho plan de pago propuesto, JLL incluyó una suma de tres mil quinientos dólares ($3,500.00) por concepto de honorarios durante la gestión de cobro, así como una suma de ciento cinco mil seiscientos cuarenta dólares con treinta y un centavos ($105,640.31) por una comisión relacionada

con un arrendamiento del Supermercado Selectos. Expresó que no recibió contestación por parte de Inmobiliaria, Quintana, ni del señor Pérez Diez. Por ello, reclamó tener una deuda vencida, líquida, exigible y no satisfecha por la suma de doscientos cuarenta y nueve mil dólares con setecientos sesenta y nueve dólares con treinta centavos ($249,769.30) por concepto de los servicios reclamados en la *Demanda*, la comisión del arrendamiento del Supermercado Selectos y los honorarios durante la gestión de cobro. A su vez, solicitó el pago de intereses, costas, gastos y honorarios de abogado por la temeridad de Inmobiliaria y Quintana.

El 1 de mayo de 2023, Inmobiliaria y Quintana presentaron una *Contestación a Demanda*, en la que aceptaron que el 11 de junio de 2020, suscribieron el Contrato con JLL y admitieron que pagaron treinta y cinco mil dólares ($35,000.00), pero negaron los pagos de cuatro mil quinientos ($4,500.00) y cuatro mil setecientos cincuenta dólares ($4,750.00).[5] Por otro lado, negaron la deuda de ciento cuarenta mil seiscientos veintiocho dólares con noventa y nueve centavos ($140,628.99) dado a que JLL no proveyó relevo de retención, por lo que arguyeron que la cantidad adeudada no era la suma reclamada. Estos aceptaron que el señor Pérez Diez reconoció que ambas corporaciones adeudaban dinero a JLL, pero que nunca aceptó la suma reclamada.

Así las cosas, el 12 de mayo de 2023, JLL radicó una *Moción de Sentencia Sumaria*.[6] Mediante esta, alegó que al TPI le correspondía declarar Ha Lugar la *Demanda* y condenar a Inmobiliaria y Quintana al pago de doscientos cuarenta y nueve mil setecientos sesenta y nueve dólares con treinta centavos ($249,769.30), más los intereses legales desde la fecha en que la deuda venció, las costas, los gastos y los honorarios de abogado por temeridad.

---

[5] *Íd.*, Anejo III, págs. 84-90.
[6] *Íd.*, Anejo IV, págs. 93-102.

Eventualmente, el 25 de mayo de 2023, Quintana presentó una *Moción de Sentencia Sumaria Desestimatoria y Oposición a Moción de Sentencia Sumaria.*[7] Mediante esta, subrayó que los servicios reclamados en la *Demanda* responden a comisiones de arrendamientos de locales en centros comerciales de corporaciones que no son parte del Contrato, que son parte indispensable y no se acumularon, siendo una CCVA. Asimismo, planteó que no suscribió el Contrato, no aprobó una Resolución Corporativa ni autorizó a persona alguna a esos efectos. Para demostrar que sus oficiales o agentes autorizados no otorgaron el Contrato, acompañó el Informe Anual de los años 2021 y 2022. Alegó que el señor Pérez Diez es oficial de Inmobiliaria, pero no está autorizado a representar a Quintana, por lo que el Contrato carece de validez con respecto a Quintana.

Por su parte, el 5 de junio de 2023, Inmobiliaria presentó su respectiva *Moción de Sentencia Sumaria Desestimatoria y Oposición a Moción de Sentencia Sumaria.*[8] En esta, solicitó la desestimación de la *Demanda* en su contra. Concretizó no ser titular, dueña, propietaria ni poseedora de derechos sobre el Centro Gran Caribe Mall de Vega Alta, donde JLL facturó los servicios reclamados en la *Demanda*. Por otro lado, adujo que estaba en controversia si el Contrato obligaba a Inmobiliaria a pagar por las comisiones de los arrendamientos en el Centro Gran Caribe Mall de Vega Alta, aun no siendo una de las propiedades incluidas en el Contrato.

Tras varios trámites procesales, el 14 de julio de 2023, JLL sometió una *Demanda Enmendada* a los fines de incorporar a CCVA como parte demandada, conjunto con Inmobiliaria y Quintana.[9] En esta ocasión, añadió como alegación que el 10 de marzo de 2020, CCVA y JLL suscribieron un *Leasing Agreement* (Acuerdo), mediante

---

[7] *Íd.*, Anejo V, págs. 104-108.
[8] *Íd.*, Anejo VI, págs. 122-129.
[9] *Íd.*, Anejo VII, págs. 133-136.

el cual CCVA contrató a JLL como su agente exclusivo para la renta o venta del Centro Gran Caribe Mall en Vega Alta o cualquier espacio de su propiedad. Puntualizó que CCVA es la propietaria del Centro Gran Caribe Mall en Vega Alta. Además, enmendó que CCVA emitió tres (3) pagos parciales por las sumas de treinta y cinco mil dólares ($35,000.00), cuatro mil quinientos dólares ($4,500.00) y cuatro mil setecientos cincuenta dólares ($4,750.00), con relación a la factura PR003RE000262. De las alegaciones de la *Demanda Enmendada*, emanó que la factura de ciento cinco mil seiscientos cuarenta dólares con treinta y un centavo ($105,640.31) responde a un arrendamiento del Supermercado Selectos ubicado en el Centro Gran Caribe Mall. No obstante, esgrimió que tanto CCVA, Inmobiliaria y/o Quintana responden por la suma de doscientos cuarenta y nueve mil setecientos sesenta y nueve dólares con treinta centavos ($249,769.30) por los servicios facturados bajo el Acuerdo suscrito entre CCVA y JLL, la factura del arrendamiento del Supermercados Selectos ubicado en Centro Gran Caribe Mall y los honorarios de abogado por la gestión de cobro.

Subsiguientemente, el 18 de agosto de 2023, CCVA presentó una *Contestación a Demanda Enmendada*, en la que aceptó ser la dueña y titular del Centro Gran Caribe Mall en Vega Alta.[10]

El 21 de agosto de 2023, Quintana reiteró su *Moción de Sentencia Sumaria Desestimatoria y Oposición a Moción de Sentencia Sumaria.*[11] Mediante esta, reclamó la desestimación de la *Demanda Enmendada* en su contra, dado que CCVA es la corporación propietaria del centro comercial donde JLL realizó los servicios reclamados.

En oposición a la desestimación solicitada por Quintana, el 22 de septiembre de 2023, JLL arguyó que, a pesar de que el Acuerdo

---

[10] *Íd.*, Anejo IX, págs. 143-147.
[11] *Íd.*, Anejo X, págs. 153-157.

relacionado al Centro Gran Caribe Mall es un contrato separado al suscrito por Quintana, las facturas correspondientes a los servicios de arrendamientos de los locales del Centro Gran Caribe Mall fueron enviadas tanto a Quintana como a Inmobiliaria y que en respuesta, las corporaciones emitieron tres (3) pagos.[12] Por ello, distinguió que las tres (3) corporaciones: CCVA, Quintana e Inmobiliaria, evadieron el pago por los servicios facturados por JLL.

Posteriormente, el 23 de septiembre de 2023, el TPI emitió una *Sentencia Parcial* en la que estableció que no existía controversia en los hechos establecidos en la *Moción de Sentencia Sumaria* presentada el 12 de mayo de 2023 por JLL.[13] No obstante, el Foro Primario declaró nulo el Contrato suscrito el 11 de junio de 2020 entre Quintana y JLL, dado que los oficiales de Quintana no lo consintieron ni lo otorgaron. En su consecuencia, el TPI desestimó la *Demanda* en cuanto a Quintana. Sin embargo, el Foro *a quo* declaró Con Lugar la solicitud de sentencia sumaria presentada por JLL, condenando a Inmobiliaria al pago de doscientos cuarenta y nueve mil setecientos sesenta y nueve dólares con treinta centavos ($249,769.30).

En desacuerdo, Inmobiliaria y CCVA acudieron a esta Curia por virtud del presente recurso y le señalaron al TPI el siguiente error:

> **ERR[Ó] MANIFIESTAMENTE EL TPI AL DECLARAR CON LUGAR LA DEMANDA ENMENDADA SUMARIAMENTE BAJO LA PREMISA EQUIVOCADA DE QUE EXIST[Í]A UN CONTRATO V[Á]LIDO Y AL RESOLVER QUE NO EXISTÍAN HECHOS ESENCIALES EN CONTROVERSIA QUE IMPIDIERA DICTAR SENTENCIA SUMARIA AL AMPARO DE LA REGLA 36 DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA INTERPRETATIVA DE LA MISMA. LA SENTENCIA APELADA INTERPRETA ERR[Ó]NEAMENTE LA FALTA DE CONSENTIMIENTO EN LOS CONTRATOS ALEGADOS EN LA DEMANDA, QUE SON NULOS Y NO GENERAN OBLIGACIÓN ALGUNA, AS[Í] COMO SE DESPRENDE UNA CONTROVERSIA REAL EN CUANTO A LA CUANT[Í]A RECLAMADA.**

---

[12] *Íd.*, Anejo XI, págs. 158-166.
[13] *Íd.*, Anejo I, págs. 1-19. Archivada y notificada en autos el 25 de septiembre de 2023.

En esencia, la parte apelante reclamó que los propios documentos de apoyo a la solicitud de sentencia sumaria de JLL establecen una controversia en cuanto a la cuantía reclamada. Dicha parte esgrimió que los contratos alegados en la *Demanda* son nulos por falta de consentimiento, en ausencia de una Resolución Corporativa para suscribir dichos contratos.[14] Asimismo, adujo que los propios documentos presentados por JLL establecen una controversia sobre la cuantía reclamada por el arrendamiento del Supermercado Selectos. Por otro lado, alegó que las juntas directoras de ambas corporaciones nunca autorizaron al señor Pérez Diez como su representante para otorgar el Contrato y el Acuerdo. Además, discutió que JLL no dirigió las facturas reclamadas a CCVA, corporación propietaria del Centro Gran Caribe Mall. A su vez, subrayó que la solicitud de desestimación de JLL se presentó previo a acumular a CCVA como parte indispensable. Por ello, solicitó revocar la determinación del TPI, desestimar la *Demanda* por nulidad por falta de consentimiento o devolver el caso al TPI para que se permita descubrir prueba en cuanto a los hechos medulares en controversia.

El 6 de noviembre de 2023, JLL presentó una *Oposición a Recurso de Apelación*, arguyendo que no existían controversias de hechos que impidieran la determinación del TPI. Por cuanto, aseveró que este Tribunal debe confirmar la *Sentencia Parcial* dictada por el TPI. Por otra parte, JLL señaló que ante esta Curia fue la primera ocasión en la que Inmobiliaria reclamó la invalidez del Contrato.

Con el beneficio de la comparecencia de las partes y en vista del error señalado, procedemos a discutir la normativa jurídica aplicable a este recurso.

---

[14] Hacemos notar que, en su recurso de apelación, la parte apelante esbozó nuevas teorías que no fueron presentadas ante el TPI.

-II-

-A-

El mecanismo procesal de sentencia sumaria está regulado por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V. El propósito de este mecanismo es la solución justa, rápida y económica de los litigios civiles en los que no existe controversia genuina de hechos materiales y se puede prescindir de la celebración de un juicio plenario dado que resta aplicar el Derecho. *Ferrer et al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Roth v. Lugo*, 87 DPR 380, 392 (1963). Los hechos materiales se definen como "aquellos hechos que pueden afectar el resultado de la reclamación bajo el derecho sustantivo aplicable". *Ferrer et al. v. PRTC*, 209 DPR 574, *supra*, en la pág. 581. Además, la controversia sobre los hechos materiales debe ser real. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Es decir:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.*, en las págs. 213-214, *citando a* P.E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (2) Rev. Forum, 8 (1987).

La parte promovente de la sentencia sumaria debe demostrar con claridad su derecho y la inexistencia de una controversia sustancial sobre algún hecho material para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o parte del pleito. *Íd.*, en la pág. 213. Véase Regla 36.3 de Procedimiento Civil, *supra*. Ahora bien, la parte promovente no puede descansar en meras

alegaciones, dado que debe presentar evidencia al tribunal que acredite la inexistencia de controversia sobre los hechos materiales. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 315; *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335-336 (2015); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 136 (2015). Dicha prueba debe ser admisible en evidencia y puede incluir certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas, prueba oral, entre otros. R. Hernández Colón, *op. cit.*, en la pág. 318.

Por otro lado, la parte promovida debe controvertir la prueba presentada por la parte promovente, demostrando los hechos que están en controversia. *Ramos Pérez v. Univisión, supra*, en la pág. 215; *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). Importante es que la parte promovida tampoco puede descansar en meras alegaciones de sus escritos judiciales, dado que debe presentar contradeclaraciones juradas y contradocumentos que controviertan los hechos presentados por la parte promovente. *Ramos Pérez v. Univisión, supra*; *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2000); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986). Pues "viene obligada a contestar de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una controversia real y sustancial que debe dilucidarse en juicio". *Ramos Pérez v. Univisión, supra.* Asimismo, "es necesario demostrar afirmativamente que se cuenta con evidencia aceptable, admisible y suficiente para ser presentada en juicio". *Jusino et als. v. Walgreens, supra*, en las págs. 577-578. Al momento de oponerse a que el tribunal dicte sentencia sumariamente, la Regla 36.3 de Procedimiento Civil, *supra*, le impone tres (3) exigencias a la parte promovida, siendo estas:

> [...] una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y

de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

[...] una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

[...] las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

Si la parte promovida no cumple en controvertir los hechos materiales que están en disputa y la moción procede como cuestión de derecho, el tribunal podrá resolver en su contra. R. Hernández Colón, *op. cit.*, en la pág. 320; Regla 36.3 (c) de Procedimiento Civil, *supra*. No obstante, la falta de oposición no es significativo de que proceda dictar sentencia sumaria automáticamente, si el tribunal no tiene ante sí la verdad sobre todos los hechos materiales. *Ramos Pérez v. Univisión, supra*; *SLG Fernández-Bernal v. RAD-MAN, supra,* en la pág. 337; *Jusino et als. v. Walgreens, supra,* en la pág. 578; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra.* La existencia de controversia sobre hechos materiales debe resolverse a favor de la parte promovida. *SLG Fernández-Bernal v. RAD-MAN, supra,* en la pág. 336; *Meléndez González et al. v. M. Cuebas, supra,* en la pág. 138. Puesto que, en esencia, "[s]iendo la sentencia sumaria un remedio discrecional, el principio rector para su utilización es el sabio discernimiento del juzgador, ya que, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". *Jusino et als. v. Walgreens, supra.*

Es norma trillada que los tribunales apelativos nos encontramos en la misma posición que el Foro Primario para evaluar la procedencia de una sentencia sumaria. *SLG Fernández-Bernal v. RAD-MAN, supra,* en la pág. 337; *Meléndez González et al. v. M. Cuebas, supra,* en la pág. 115; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2015);

*González Santiago v. Baxter Healthcare, supra*. Como foro apelativo, venimos obligados a examinar *de novo* el expediente y verificar que las partes cumplieron con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra*. *SLG Fernández-Bernal v. RAD-MAN, supra*, en la pág. 338; *Rivera Matos et al. v. Triple-S et al., supra*. Importante es que en este ejercicio, no consideraremos nuevos asuntos que no fueron presentados oportunamente ante el tribunal de instancia ni nuevas teorías esbozadas por los litigantes. Véase *González Meléndez v. Mun. San Juan*, 2023 TSPR 95, 212 DPR __ (2023); *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004); *Ortiz Torres v. K&A Developers, Inc.*, 136 DPR 192, 202 (1994). El máximo foro judicial delimitó nuestra intervención a los siguientes aspectos:

> **Primero**, [...] el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
> **Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.
> **Tercero**, [...] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, **el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra,* en las págs. 118-119.

Por último, de encontrar que los hechos materiales realmente están incontrovertidos, procede revisar *de novo* si se aplicó correctamente el Derecho. *SLG Fernández-Bernal v. RAD-MAN, supra.* Por otro lado, "los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *Íd.* Sin embargo, nos corresponde intervenir con las determinaciones de hecho cuando medie error manifiesto, pasión, prejuicio o parcialidad y abuso de discreción. *Íd.*

En lo atinente a las controversias sobre incumplimiento de contrato, para que la parte demandante prevalezca por la vía sumaria, debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción, a saber, "existencia de los daños alegados, el incumplimiento culposo o doloso de la obligación contractual y la relación causal entre el incumplimiento y los daños". *Ferrer et al. v. PRTC, supra,* en la pág. 581.

-B-

En otro extremo, el Código Civil de Puerto Rico establece que son fuentes de las obligaciones: la ley, los contratos, los cuasicontratos, los actos ilícitos, los actos u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico. 31 LPRA sec. 8984. En particular, un contrato se define como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". *Íd.,* sec. 9751. El Código Civil dispone que el perfeccionamiento de un contrato ocurre "desde que las

partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". *Íd.*, sec. 9771. Así las cosas, las partes tienen la libertad contractual de acordar cualquier cláusula, siempre y cuando no sea contraria a la ley, a la moral ni al orden público. *Íd.*, sec. 9753. Ahora bien, es menester destacar que "**[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley**". *Íd.*, sec. 9754 (Énfasis nuestro). Por otro lado, si los términos pactados son claros y no dan lugar a dudas sobre la intención de las partes, se entenderá conforme con el sentido literal de las palabras. *Íd.*, sec. 6342. Los términos de un contrato se consideran claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, (2009); *Sucn. Ramírez v. Tribunal Superior*, 81 DPR 357, 361 (1959). Es decir, si no se trata de un término, no procede que el tribunal dirima la intención de las partes al momento de contratar. *American Fed. Musicians v. COSPR*, 211 DPR 491, 507 (2023). Por cuanto, "en ausencia de ambigüedad, el cumplimiento con las cláusulas del contrato es obligatorio y su contenido es ley entre las partes". *San Luis Center Apts. et at. v. Triple-S*, 208 DPR 824, 832 (2022); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 708 (2017).

Analizada la controversia de marras dentro del marco doctrinal previamente esbozado, nos hallamos en posición de resolver.

-III-

En el caso de autos, Inmobiliaria y CCVA señalan un error cometido por el TPI. Nos plantean que el TPI incidió al dictar la *Sentencia Parcial* al entender que existía un contrato válido y al

resolver que no existían hechos en controversia que impidieran dictar la sentencia sumaria.

Luego de examinar *de novo* la solicitud de sentencia sumaria y los documentos acompañados, concluimos que erró el TPI al dictar sentencia sumaria en contra de Inmobiliaria. La evidencia que presentó el propio JLL en la solicitud de sentencia sumaria, demostró que existen controversias de hechos materiales y esenciales.

Tras evaluar ponderadamente los documentos que nos ocupan, resolvemos que los siguientes hechos quedaron debidamente establecidos:

1) El 11 de junio de 2020, JLL, Inmobiliaria y Quintana suscribieron el Contrato mediante el cual acordaron que, por un término de doce (12) meses, JLL sería el agente exclusivo de Inmobiliaria y Quintana para arrendar las propiedades Santa María Shopping Center en Guaynabo; Laguna Gardens Shopping Center en Carolina; Villa Fontana Shopping Center en Carolina; Plaza Salinas en Salinas; Montesol Shopping Center en Fajardo; y La Quinta Shopping Center en San Germán.

2) A tenor con el Contrato, JLL generaría una comisión de seis por ciento (6%) al obtener un nuevo arrendamiento sin intervenir otro corredor de bienes raíces y cuatro por ciento (4%) si no intercedía otro corredor de bienes raíces, y una comisión de cinco por ciento (5%) en las renovaciones de arrendamientos cuando colaboraba otro corredor de bienes raíces y dos punto cinco por ciento (2.5%) al no intervenir otro corredor de bienes raíces.

3) JLL reclama que se le adeuda una suma de ciento cuarenta mil seiscientos veintiocho dólares con noventa y nueve centavos ($140,628.99) por concepto de servicios reflejados mediante las facturas PR003RE000262; PR003RE000291; PR003RE000294; PR003RE000307; PR003RE000309; PR003RE000320; PR003RE000326; PR003RE000337; PR003RE000345; PR003RE000349; PR003RE000367; PR003RE000379; PR003RE000388 y PR003RE000418, correspondientes a arrendamientos de locales ubicados en el Centro Gran Caribe Mall de Vega Alta.

4) Además, JLL reclama el pago de las comisiones por el arrendamiento del local donde ubica el Supermercado Selectos en el Centro Gran Caribe Mall de Vega Alta.

5) De dos (2) confirmaciones de pagos relacionados con la factura PR003RE000262 por las sumas de treinta y cinco mil dólares ($35,000.00) y cuatro mil setecientos cincuenta dólares ($4,750.00), emanó que CCVA realizó dichos pagos.

6) El 30 de noviembre de 2022, JLL cursó una carta de cobro hacia el señor Pérez Diez, reclamando la suma de ciento treinta y nueve mil seiscientos setenta y nueve

mil dólares con diecinueve centavos ($139,679.19) por concepto de los servicios reflejados mediante las catorce (14) facturas.

7) El 11 de enero de 2023, JLL cursó una carta de cobro hacia el señor Pérez Diez, reclamado la suma de doscientos cuarenta y ocho mil ochocientos diecinueve dólares con cincuenta centavos ($248,819.50), correspondiente a los servicios reflejados mediante las catorce (14) facturas, honorarios por la gestión de cobro y las comisiones por el arrendamiento del local donde ubica el Supermercado Selectos en el Centro Gran Caribe Mall de Vega Alta.

No obstante, atisbamos que el siguiente hecho está en controversia:

1) Si Inmobiliaria responde por la comisión de los arrendamientos en los locales del Centro Gran Caribe Mall de Vega Alta, aun cuando dicho centro comercial no está incluido en el Contrato suscrito el 11 de junio de 2020 entre JLL, Inmobiliaria y Quintana.

Pues la determinación del aludido hecho en controversia es medular para dirimir sobre la exigibilidad del pago de la cuantía de doscientos cuarenta y nueve mil setecientos sesenta y nueve dólares con treinta centavos ($249,769.30) reclamada por JLL contra Inmobiliaria. Así las cosas, entendemos que el TPI erró al determinar que no existían controversias de hechos materiales que le impidiesen resolver el caso mediante sentencia sumaria. Pues, el Foro Primario debía dilucidar el hecho en controversia en juicio.

Por todo ello, decidimos revocar en parte la determinación del Foro Primario y nos pronunciamos No Ha Lugar con respecto a la *Moción de Sentencia Sumaria* presentada el 12 de mayo de 2023 por JLL, al atisbar que existen controversias de hechos materiales y esenciales que resultan incompatibles con dicho mecanismo procesal.

-IV-

Por los fundamentos que anteceden, revocamos en parte la *Sentencia Parcial*, a los efectos de declarar No Ha Lugar a la solicitud de sentencia sumaria de JLL.

Devolvemos el caso al TPI para que continúe con los procedimientos, de conformidad con lo resuelto por este Tribunal.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.



Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones